Jack Woods, Appellee, v. Lawndale Enterprises, Inc.
et al., Defendants.
Appeal of Lawndale Enterprises, Inc., Appellant.

Gen. No. 40,768.

572

Opinion filed December 13, 1939.

Louis B. Simon, of Chicago, for appellant.

Prescott, Burroughs & Taylor, of Chicago, for appellee; Andrew J. O'Donnell, Patrick B. Prescott, Jr. and A. M. Burroughs, of Chicago, of counsel.

Mr. Justice Burke delivered the opinion of the court.
On October 18, 1937, plaintiff filed his amended five count complaint against Dr. William Rubinson, Lawndale Enterprises, Inc., and Lawndale Theatre Corporation, Inc. Later, three additional counts were filed.

All the counts, except the additional second count (which the parties call the "additional 7th count") charge the defendants with negligence in allowing a globe, or shade, of an electric light fixture on the leased premises at 4025 West Roosevelt road, Chicago, to be in a state of disrepair. The additional count 7 charges that defendant, Lawndale Enterprises, Inc., the landlord, leased a store to the tenant, Dr. William Rubinson with a globe or shade or fixture in the store entrance, in a defective condition, and known to be so by the landlord at the time of the letting. The defendants filed answers joining issue. The case was tried before the court and a jury. At the close of plaintiff's evidence, and on the motion of plaintiff, the defendant, Lawndale Theatre Corporation, Inc., was dismissed from the cause. The jury returned a verdict finding the defendants guilty and assessing plaintiff's damages at the sum of $2,600. The court entered judgment on the verdict. At the close of plaintiff's evidence and again at the close of all the evidence, the defendant, Lawndale Enterprises, Inc., moved the court for a directed verdict in its favor, and after the verdict, the same defendant moved for a judgment notwithstanding the verdict, and in the alternative, for a new trial. These motions were overruled. The defendant, Lawndale Enterprises, Inc., prosecutes this appeal.

As a general rule of law, a landlord is not liable for injuries on premises leased to a tenant and under the tenant's control. This rule applies not only to the enclosed portion of the premises, but also to any entrance, passageways, etc., so long as these appurtenances are not reserved under the landlord's control in common for the use of the tenants of the entire building. There are well recognized exceptions to the general rule of the liability of the landlord, among which are (1) a latent defect existing at the date of the lease of the premises to the tenant, which defect was known to the landlord or could have been known

by him in the exercise of reasonable care, and which defect could not have been discovered by a reasonable examination of the premises by the tenant; (2) a fraudulent concealment from the tenant by the landlord of a known, dangerous condition; (3) that the thing which did the harm amounted in law to a nuisance; or (4) a promise to repair the premises made by the landlord to the tenant at the time of the leasing. The law is well established that the liability of the landlord is no greater, insofar as the rights of the tenant's employee is concerned, than the liability of the landlord to the tenant. On these propositions of law, the parties are not in disagreement. Defendant, the landlord, declares that the first five counts and the first and third additional counts of the amended complaint, do not purport to base any liability under any one of the exceptions to the general rule as to the nonliability of a landlord. Plaintiff admits that the additional count 2 of the amended complaint bases the claimed liability of the landlord upon one of the exceptions. That additional count charges that at the time of the letting, the glass shade or globe was in an insecure condition, that the shade, or globe, was in a dangerous condition, and that defendant knew, or should have known, of such insecure and dangerous condition. Defendant contends that there is not a scintilla of evidence in the record which sustains, or tends to sustain, the allegations last mentioned. Defendant insists that the issue in the case was one of law and not of fact, and that it was the duty of the court to direct a verdict. Hence, it now asks that we enter a judgment notwithstanding the verdict, or in the alternative, reverse and remand the cause for a new trial. Plaintiff repels the contention by stating that he was in the employ of Dr. Rubinson, one of the defendants, and that he was also employed by the other defendant, the landlord, and that the landlord did not relinquish control and dominion over the entranceway to the store of Dr. Rubinson, and that it

was the duty of the landlord to keep the entranceway to the store in a proper state of repair.

The defendant, Lawndale Enterprises, Inc., owned a large three-story building running from 4015 to 4029 West Roosevelt road, Chicago, consisting of a theatre, several stores and many apartments occupied by different tenants. The theatre was operated by the Lawndale Theatre Corporation, Inc. which on motion of plaintiff, was dismissed from the case. On November 27, 1936, the defendant, Lawndale Enterprises, Inc., and Dr. William Rubinson executed a sealed lease under which the store known and described as the street floor at 4025 West Roosevelt road, was leased to Dr. Rubinson for a term commencing December 1, 1936, and expiring April 30, 1938. The fourth covenant of the lease reads as follows:

"Lessee has examined said premises prior to and as a condition precedent to his acceptance and the execution hereof, and is satisfied with the physical condition thereof, and his taking possession thereof shall be conclusive evidence of his receipt thereof in good order and repair, except as otherwise specified hereon, and agrees and admits that no representations as to the condition or repair thereof has been made by Lessor or his agent, which is not herein expressed, or endorsed herein; and likewise agrees and admits that no agreement or promise to decorate, alter, repair or improve said premises, either before or after the execution hereof, not contained herein, has been made by Lessor or his agent."

The fifth covenant requires the lessee to keep the premises and appurtenances thereof in a clean, sightly and healthy condition and in good repair at his own expense; that he shall make all necessary repairs and renewals upon the premises and replace broken globes, glass and fixtures with material of the same size and quality as that broken. A rider attached to the lease also provided that the lessee "shall do all the painting,

cleaning and decorating at his own expense.'' The building is located on the south side of Roosevelt road; the east part is occupied by the Lawndale Theatre; west of that is a barber shop operated by Carl Merl; adjoining the barber shop on the west was a shoe-shining parlor operated by a man named Sam; west of the shoeshining parlor was Dr. Rubinson's office, and adjoining his office on the west was a delicatessen store. Dr. Rubinson went into possession of his store on December 1, 1936. He was an optometrist. The entrance to Dr. Rubinson's store is described as being in the shape of an elongated square. The floor was of mosaic tile. There is a slope from the sidewalk level to the door of 5 inches, the entranceway being 45 inches from the sidewalk to the door. At the sidewalk the entrance is 5 feet wide and at the door it is 43 inches wide. The entrance to Dr. Rubinson's store was in the center of his store. Above the door was a 3-inch moulding and above that was a transom the width of the door and 42 inches high. There were two display windows one on each side of the entrance. There was an electric light fixture flush with the ceiling in the center of the entranceway. The fixture extended down approximately 8 inches, and attached to it by three screws was a glass globe, which the witnesses also describe as a shade. The switch for the entranceway light was in Dr. Rubinson's office, and any current used in the entranceway light would be charged to Dr. Rubinson as measured by his meter.

Plaintiff, 29 years of age, had been employed by Dr. Rubinson for about 4 months prior to May 11, 1937, and worked for him as a porter and all around handy man three days a week. During these four months he also worked for the Lawndale Theatre and received $7 a week from the Lawndale Theatre Corporation. During the same period, he had other odd jobs in the neighborhood, but not in the same building. Plaintiff did not work for the theatre corporation during the day

time. He went to work in the theatre between 6:30 and 7:00 o'clock in the evening and worked about 3 hours. The janitor of the entire building owned and operated by the defendant, kept the halls clean, saw that the tenants got steam when the weather conditions so required, and that the garbage from the apartments was taken down. He was instructed not to give any kind of service to the stores, except to furnish hot and cold water and steam. It was not his duty to mop floors or vestibules or entrances, nor to take out garbage from the stores. Each of the stores had an entrance in the center thereof, and the entrance to Dr. Rubinson's store was the sole and only entrance to that store and did not connect with any other part of the building or the basement or any apartment or any hallway. The display windows of the tenants' stores were on each side of the entranceway. Just previous to the execution of the lease between the landlord and the tenant, a maintenance man representing the landlord, examined the store premises and found them to be all right. He examined the globe in the fixture in the entranceway and found that there were no screws missing. The light was about 10½ or 11 feet above the floor. By the lease the tenant agreed *inter alia* that he had examined the premises, that he was satisfied with the physical condition thereof, that he received the same in good repair, and that no representation as to condition or repair had been made by the landlord; that he covenanted to keep the premises and appurtenances thereof in good condition and repair, and that he would yield the same back to the landlord upon the termination of the lease in the same condition of cleanliness, repair and sightliness as at the date of the execution of the lease. He also agreed in the lease to make all necessary repairs and renewals and replace broken globes at his own expense. Plaintiff was employed by the tenant on a part time basis. He cleaned the floors of the store and kept the windows clean, and

acted as porter three days of the week. Each of these days, plaintiff spent three hours in and about the store of the tenant, remaining at the tenant's store for about a half hour at a time. All of his services for the tenant were during the day time. He also did other odd jobs in the neighborhood. These other jobs were performed away from the building. Presumably, in acting as a porter, he came in and out of the various places where he was employed as the necessity arose, to keep such places in a clean and presentable condition. Plaintiff went to work at Dr. Rubinson's store at about 10 a. m. on May 11, 1937. Dr. Rubinson told him to wash the outside windows, which he did. Then Dr. Rubinson told him to get the keys from the janitor, go down to the basement and obtain the screens and hang them in their proper places in the doorway and transom. The screens were the property of the landlord and were stored in the basement of the building. The screens had not previously been used by this tenant as he had moved into the premises during the cold weather. Plaintiff accordingly sought out the janitor and asked for the keys. Plaintiff testified that ''I told him I wanted to get the screens out of the basement to put them up. He told me he was too busy, to get them myself and put them up.'' Thereupon plaintiff went to the basement and procured the two screens and brought them to Dr. Rubinson's store. He told Dr. Rubinson that he needed some screws in order to put up the screens, and his employer gave him money to purchase the screws, which he did. He then came back to the store and placed the screen door in its proper position. He then borrowed a small stepladder from the proprietor of the shoeshining parlor and placed the ladder so that the rear part was close to the door, between the electric light fixture and the door. He took the screen for the transom in both hands and climbed up the stepladder to the third step. Without any difficulty, he placed the screen in its proper position in the transom and secured it with cleats. He de-

scribed the operation by saying that he "turned the buttons and made it secure." He testified that: "I come down on the tile floor and I looks up to see if it was fastened up right. While I was looking up, at the same time a street car and a truck passed by going east. All of a sudden something hit me on the head. I got cut on the head and nose. Dr. Rubinson came out and said 'What is the matter?' I said 'I don't know, something hit me.' He said 'Well, go to a doctor, Dr. Karbelnig.' I goes over there. He puts three stitches in my nose. I said, 'Don't make it too big, I want to go to work this noon.' He said, 'All right.' So he put a little patch up there. So I goes to the mirror, looks up and finds I cannot see out of this eye. I went back and said, 'What is the matter, Doctor, I can't see out of it.' He said, 'Oh, I didn't know that.' So I went back to the office—so I went back to go to work, to Dr. Rubinson's office, got inside and went to get my pail to go down on my knees, and he said, 'Jack, that is all right. You don't need to work. I will get somebody else to do it.' I said, 'Oh, I can do it.' He said, 'That is all right, you had better go home.' So I went back home." The next day Dr. Karbelnig washed his eye and bandaged it again. He continued to receive treatments from Dr. Karbelnig all of that week. The condition of his eye did not improve, and on May 18, 1937, he went to the County Hospital. Dr. Karl Scheribel, who examined him at the County Hospital, testified that plaintiff had considerable swelling and redness of the left eye; that there was a longitudinal cut of the eyeball, and that it was necessary to remove the eye, and that the eye was removed about a month after the patient entered the hospital. The loss of the eye was due to the fact that the glass globe attached to the electric light fixture in the entranceway fell and injured him.

Carl Merl, the proprietor of the barber shop which was the second door east of Dr. Rubinson's store, was called as a witness for plaintiff, and testified that he

had been in the building for nine and one half years, and in his present location for seven years. Prior to the time he testified, he occupied the store at 4025 West Roosevelt road, which was occupied by Dr. Rubinson at the time plaintiff was injured. He stated that he had his own porter, and that he put up his own screens; that the janitor of the building "never puts them up for me or for any other storekeeper in the building. The only service anyone gets out of the building is hot and cold water and steam heat. The janitor never cleaned any entrances to any store in the building." Mr. Merl further testified that when he occupied the store seven years previously, he took the electric bulb out.

Plaintiff filed a claim with the industrial commission under the provisions of the Workmen's Compensation Act, and named as respondents, Dr. Rubinson, Herman Nelson, Charles Nelson, Lawndale Theatre Corporation and Edward P. McGuire. It appears that Herman Nelson was the manager of the theatre, and at the time of the occurrence, was also manager of the building. Charles Nelson is his brother and was general manager and secretary of Lawndale Enterprises, Inc., the defendant herein. On September 3, 1937, an arbitrator for the industrial commission rendered a decision "that the petitioner and respondents were not on May 11th, 1937, operating under the provisions of the Workmen's Compensation Act; that on the date last above mentioned, said petitioner sustained accidental injuries which did not arise out of but in the course of employment. . . . That necessary first aid, medical, surgical and hospital services have partially been provided by Dr. William Rubinson, one of the respondents herein; that petitioner is not entitled to have and receive from said respondents any compensation for the reason that the injuries sustained did not arise out of the petitioner's employment and that the petitioner did not, at the time of the accidental injury, come under the

provision of the Workmen's Compensation Act.''
Plaintiff, although entitled to petition the commission
to review the decision of the arbitrator, did not do so,
nor did he ask that a statutory writ of certiorari issue
out of the circuit or superior court to review the deci-
sion. It will be observed that the plaintiff did not make
Lawndale Enterprises, Inc., the landlord, a respondent
before the industrial commission.

In passing on the issues, we do so in full apprecia-
tion of the rule that a motion to direct a verdict is in
the nature of a demurrer to the evidence; that the evi-
dence so demurred to in its aspect most favorable to
the plaintiff, together with all reasonable inferences
arising therefrom, must be taken most strongly in favor
of the plaintiff; that the evidence is not weighed, and
that all contradictory evidence and explanatory cir-
cumstances must be rejected. The question presented
by the motion is whether there is any evidence fairly
tending to prove the plaintiff's complaint. If the evi-
dence at the close of plaintiff's case does not justify an
instruction for a verdict in favor of defendant, no evi-
dence which defendant may introduce will justify such
instruction, except the uncontradicted evidence of facts
consistent with every fact which the evidence of the
plaintiff tends to prove, but showing affirmatively a
complete defense. (*Nelson v. Stutz Chicago Factory
Branch,* 341 Ill. 387; *Illinois Tuberculosis Ass'n v.
Springfield Marine Bank,* 282 Ill. App. 14; *Shannon v.
Nightingale,* 321 Ill. 168.)

Plaintiff contends that in addition to being employed
by Dr. Rubinson, he was also employed by the landlord
''to do porter work, keep the aisles clean and sweep the
sidewalks.'' The parties are in agreement that he was
employed by Lawndale Theatre Corp., Inc. However,
that employment was during the evening. His employ-
ment during the day in and around the premises was in
the store of Dr. Rubinson. He performed other odd
jobs in the neighborhood during the day time, but away

from the building. Plaintiff argues that when he went to procure the screens, the janitor of the building told him he was too busy, and that plaintiff should get them and put them up. We have carefully read the testimony. It clearly shows that what the janitor said was that he was too busy to accompany plaintiff in procuring the screens. The janitor did give plaintiff the keys and told him to get the screens himself and put them up. Manifestly, the janitor did not indicate that it was his (the janitor's) duty to put up the screens. The undisputed evidence is that the screens of all the tenants of the stores were put up by themselves, or by someone hired by them. It is also clear that plaintiff, in procuring the screens and in putting them in place, was acting only in his capacity as an employee of Dr. Rubinson. An indication that plaintiff did not consider Lawndale Enterprises, Inc., as his employer, is shown by the fact that he did not include that corporation as a respondent in his claim filed with the industrial commission. Plaintiff insists that the entranceway was under the dominion and control of the landlord, and was held out by it to the public use; that hence the injury to any person arising out of the failure to keep it or any appurtenance of it in a proper state of repair, imposes liability upon the landlord. A careful consideration of all the evidence, including a good photograph of the entranceway, convinces us that the entranceway was a part of the premises that were leased to Dr. Rubinson. The leased premises are described as "4025 West Roosevelt Road." Leased premises are not always inclosed. It is a matter of common knowledge that for the purpose of display, buildings are frequently so constructed as to allow prospective customers to walk into the entranceway in order to observe the merchandise on display. The purpose manifestly is to attract customers. The person viewing the display may or may not become a purchaser. It is also common knowledge that people go

into a retail store and come out without making a purchase. However, that fact would have no bearing on the question of liability in case of injury to a shopper, as between the landlord and the tenant. Real estate is also rented where the premises are only partly enclosed, as for instance open air markets and gasoline filling stations. Yet, the fact that the public may freely go on such premises for the purpose of inspecting the merchandise with the object of purchasing, would not affect the liability of the landlord in case of injury on the premises, unless the party injured could come within one of the exceptions to the general rule. The entranceway was not reserved under the landlord's control. Concededly, it was not used as a common passageway for the use of the other tenants of the building. The tenant expressly covenanted to keep the premises and the appurtenances in good repair.

Plaintiff cites the case of *Tomle v. Hampton*, 129 Ill. 379. That case comes within one of the exceptions to the general rule, namely, that where the premises are let with a nuisance upon them, by means of which the injury complained of is received, the landlord is liable. In that case, the opening through which the plaintiff fell, existed without any guard or protection before the lease was made to the tenants. The court held that the opening, under the circumstances disclosed, constituted the maintenance of a nuisance. The court said, p. 384:

"It is admitted that the appellant made the opening below the show window as it was when the appellee was hurt. He was therefore, the author of the nuisance, and, being such author, when he leased to others, he was guilty in law of continuing the nuisance. He rented the premises with the original wrong attached to them. The lease affirmed the continuance of the wrong. He received rent as a consideration of the continuance, and should answer for the damage it occasioned." The rule there announced is not applicable to the factual situation in the case at bar. We

are of the opinion that the instant case comes within the doctrine announced in *West Chicago Masonic Ass'n v. Cohn*, 192 Ill. 210. In that case, on November 12, 1895, plaintiff stepped or fell into a coalhole in the sidewalk in front of the premises known as 200 West Randolph street (under the old numbering system). Defendant therein was the owner of a four-story and basement building. The coalhole in the sidewalk into which the plaintiff fell, opened into a vault under the walk which was connected with and constituted an appurtenance to the basement of No. 200 of the building. The basement and appurtenance thereto was then in possession of one Henry Wilker, a tenant of defendant. Wilker had operated the basement proper as a saloon, and used the vault under the sidewalk for toilets and to receive and store coal. There was evidence tending to show that neither the defendant nor any of its tenants in the building, other than Wilker, had access to the vault containing the toilets and coal bin, but that Wilker had entire control thereof, the only entrance thereto being from the saloon occupied by him, and that the building was not appurtenant to any other part of the building. The jury returned a verdict in favor of plaintiff, on which judgment was entered. In reversing the judgment, the Supreme Court said, p. 217: "There was no evidence tending to show the injury was occasioned by reason of any defect or fault in the original construction of the vault, the coal-hole or the cover to the hole. The negligence on which the right to recover rested was, that the cover of the coal-hole had become insufficient and defective through a failure to keep it in repair. There was evidence tending to show the vault and coal-hole were appurtenant to the basement, only, of the building, and that the basement, including the vault and the coal-hole, was, and for some years prior thereto had been, in the exclusive possession of a tenant of the appellant company, who held the same under a

lease, wherein he had covenanted that he had received the premises 'in good order and condition' and would keep the same in 'good repair during the period of the lease.' The tendency of this testimony was to establish that the negligence (if any) which caused the injury to appellee was not that of the appellant company. The general rule is, that the occupant of premises is responsible for injuries inflicted upon another by reason of the neglect or failure to keep the premises in repair. (*City of Chicago v. O'Brennan*, 65 Ill. 160; *Gridley v. City of Bloomington, supra; City of Boston v. Gray*, 10 N. E. Rep. 509.) This court has recognized exceptions to this general rule, as follows: The owner of leased premises may be made liable for such injuries (*a*) if the covenants of the lease require that he shall keep the premises in repair; (*b*) if the dangerous or defective condition by which the injury was occasioned existed when the premises were leased; (*c*) if that which occasioned the injury was a nuisance and was upon the premises when the lease was executed. (*Gridley v. City of Bloomington, supra; City of Chicago v. O'Brennan, supra; City of Peoria v. Simpson*, 110 Ill. 294.) In the case at bar the coal-hole was placed in the sidewalk and the vault underneath it constructed with the consent of the city authorities. There is no proof or claim the work of construction was improperly or unskillfully done, or of other grounds upon which to base an insistence the premises were let with a nuisance upon them, or that the coal-hole, or the cover thereto, was in a dangerous or defective condition when the appellant company parted with the possession and control thereof. The tenant expressly covenanted he would keep the same in good repair, and was in full and exclusive possession of the basement and of the vault under the sidewalk, and, so far as the appellant company is concerned, of the 'hole' in the sidewalk leading to the vault. Hence the liability of the appel-

lant company cannot be predicated upon any of the exceptions to the general rule which this court has heretofore recognized.

"It is contended, however, that another exception should be declared in cases such as this, where the owner of a building is granted the privilege of excavating a vault under the sidewalk of a public street and opening a coal-hole in such sidewalk for the benefit of his premises; that in such instance the owner of the premises assumes, by implication, the duty of keeping the sidewalk where he has opened it in as good condition and as safe for the public use as if the opening had not been made; that such duty is imposed by law for the public safety; and while it is conceded this duty runs with the land, and the alienation of the entire premises, either permanently, by deed, or temporarily, as by a lease, would transfer the duty to the grantee or tenant, still it is urged the conveyance of an undivided interest, or demise of a part, only, of the premises, should not be held to relieve the owner of the duty he owes to the public, and to cast the same upon the tenant of a part, only, of the premises, though the opening in the sidewalk has no relation to any other portion of the building other than that in possession of the tenant. Public safety and sound public policy, it is urged, demand that nothing less than the alienation or parting with the possession of the entire premises should operate to relieve the owner of such premises from the duty which was originally imposed upon and impliedly accepted by him. The view seems to have obtained the sanction of the court of appeals of the State of New York in the case of *Trustees v. Foster,* 156 N. Y. 354; 50 N. E. Rep. 971. We do not regard the case of *Irvin v. Fowler,* 5 Robertson, 482, as also authority for the view. In that case, Fowler, the landlord, and his tenant, were held liable to a stranger for injuries received by falling through a coal-hole in the sidewalk. Fowler, the owner and landlord, was not in possession,

but the coal-hole had been constructed without the consent of the city and constituted a nuisance, and Fowler let the premises with the nuisance upon them. His case fell within one of the exceptions to the general rule hereinbefore mentioned as recognized in this jurisdiction.'' We agree with the statement of plaintiff that one good count in a complaint is sufficient to sustain the verdict.

Another point made by plaintiff is that in considering whether the landlord is liable, we should remember that plaintiff was putting up screens which belonged to the landlord. It is conceded that the screens belonged to the landlord. For that matter, the entire building belonged to the landlord. The fact that the screens belonged to the landlord, while deserving of consideration in connection with the other facts and circumstances in the case, does not establish that in placing the screens the plaintiff was acting as the agent of the landlord. The evidence clearly shows that he was not, but that he was acting for Dr. Rubinson. Counsel for plaintiff also calls our attention to the testimony of Dr. Rubinson that at the time of the accident there were only two screws in the fixture instead of three. The undisputed evidence is that at the time the lease was entered into and just before the tenant moved in, everything, including the electric light fixture of which the globe was a part, was ''all right.'' Plaintiff also invites attention to certain portions of the rules and regulations which are a part of the lease. One of the rules provides that the lessee shall not place any advertising signs upon the roof, exterior walls, windows or any other part of the premises, except with the written consent of the lessor, and that all advertising rights are reserved by the lessor. If and when, under that provision, the lessee obtained permission to place signs in the windows or other parts of the premises, such signs and premises would nevertheless still be under the control of the lessee. In our opinion, the provision of the

rule does not affect the liability of the landlord. The purpose of requiring the landlord's permission, undoubtedly, is to prevent tenants from putting objectionable or offensive signs in windows or other parts of the premises, which signs might affect the reputation of the building and thereby reduce the value thereof. A further point mentioned by plaintiff is that the tenant did not use the light in the entranceway. Apparently, there was sufficient light from the windows. The tenant was not required to use the light. He controlled the switch and the light was for his benefit to use or not, as he wished. The fact that he did not, could not affect the liability of the landlord.

From a thorough consideration of the record, we are satisfied that it was the duty of the court to direct a verdict for the defendant. Therefore, the judgment of the superior court of Cook county is reversed and a judgment notwithstanding the verdict for the defendant, Lawndale Enterprises, Inc., and against plaintiff for costs is entered.

*Judgment reversed and judgment notwithstanding the verdict entered here for defendant, Lawndale Enterprises, Inc., and against plaintiff for costs.*

DENIS E. SULLIVAN, P. J., and HEBEL J., concur.