Daniel J. Hamilton and Edna Hamilton, Appellees, v.
Ollie Baugh, Appellant.

Term No. 48M5.

Opinion filed October 15, 1948. Released for publication November 19, 1948.

JOHNSON & JOHNSON, of Belleville, for appellant.

Jos. B. McGLYNN, of East St. Louis, for appellees; WAYNE P. WILLIAMS, of East St. Louis, of counsel.

MR. JUSTICE BARDENS delivered the opinion of the court.

Plaintiffs appellees, Daniel J. Hamilton and Edna Hamilton, hereinafter referred to as plaintiffs, brought suit in the city court of the city of East St. Louis, Illinois, against defendant appellant, Ollie Baugh, hereinafter referred to as defendant, seeking to recover for injuries alleged to have been sustained by them while occupying as tenants, on a month to month basis, under oral agreement, certain premises owned

by the defendant situated in the city of East St. Louis, Illinois. At the close of plaintiffs' evidence, and at the close of all evidence, defendant moved the court to instruct the jury to return verdicts in her favor. Both motions were denied and the cause submitted to the jury. Thereafter verdicts were returned by the jury, finding the defendant guilty and assessing the damages of plaintiffs, respectively, at the sum of $40 and $750. Motions by defendant for judgments in her favor notwithstanding said verdicts were overruled by the court and judgments entered upon the verdicts so returned by the jury. Defendant brings the matter to this court on appeal, seeking reversal of said judgments and for judgments in her favor notwithstanding the verdicts, and assigns as errors relied upon for reversal of this cause the refusal by the court to direct verdicts in her favor and denial of motions for judgments notwithstanding the verdicts, as above outlined.

The injuries complained of are alleged to have been received on account of the defective condition of the toilet facilities on said premises, consisting of a wooden outdoor privy, by reason of which it is charged both plaintiffs were thrown into the vault of said privy and thereby injured. The acts of negligence charged on the part of the defendant in this connection, and for consideration on this appeal, are contained in paragraphs 5, 6 and 7 of both counts of the complaint and are, in substance, as follows:

5—That the defendant owed a duty to warn plaintiffs of all defects and dangerous conditions concerning the privy or its floor which were unknown to the plaintiffs and which plaintiffs could not discover by a reasonable examination, and which were known by defendant or which could have been known by the exercise of ordinary care and caution; that the defendant negligently and carelessly failed and neglected to warn plaintiffs that the supports, braces and fastenings of the floor were rotted and decayed and that the floor was insecure, defective and unsafe at the time

of the leasing of the premises, which was a fact known by the defendant or which could have been known by an examination.

6—That it was the duty of the defendant to maintain the privy in compliance with the following ordinance of the city of East St. Louis which was at all times mentioned in the complaint in full force and effect;

"Every tenement in said city used as a dwelling house . . . shall be furnished by the owner or agent of the same with a suitable privy or water closet. Privies for dwellings, when not connected with the sewer and water works, shall be sunk in the ground at least six feet deep . . . and shall be walled up with brick or stone, or curbed with two inch plank . . . and every owner or agent of any premises who shall violate or fail to comply with any of the provisions of this section shall be deemed guilty of maintaining a nuisance . . . ."

Further, that although said premises were used as a dwelling by plaintiffs and the privy was not connected with the public sewer in the alley at the rear of the premises, the defendant negligently and carelessly failed to comply with said ordinance; the privy hole or vault was not walled up with brick or stone nor was it curbed with two inch plank, and there was nothing to or upon which the floor of said privy could rest or be secured, fastened or made safe at the time of the leasing of said premises.

7—That it was the duty of defendant to provide the tenants with a suitable privy or toilet facilities; that defendant, not regarding her duty, negligently and carelessly suffered and permitted the vault to become full to the extent that the braces, supports and fastenings of the floor rotted and decayed so that they were in all respects defective, insecure and unsafe at the time of the leasing of the premises.

▆▆ It is the contention of defendant that since plaintiffs did not introduce any evidence tending to show that the defendant ever had knowledge of any

defective or unsafe conditions that the plaintiffs are not entitled to judgments, even though plaintiffs alleged that the floor was insecure, unsafe, and defective, and that defendant owed a duty to tell plaintiffs of any such unsafe or defective conditions which were unknown to plaintiffs and which plaintiffs could not discover by reasonable examination, but which were known to the defendant or "which could have been known by the exercise of ordinary care and caution." In this contention we agree with the defendant. It is the settled law in Illinois that a tenant has a right of action against the landlord for injuries resulting from a latent defect, only, when the tenant can show that the landlord had actual knowledge of such defect; that the defect must be one which a tenant could not be expected to discover upon reasonable inspection, and that the landlord fails to disclose to the tenant his knowledge of the defect. The basis of the liability is fraudulent concealment by the landlord and this, necessarily implies knowledge on the part of the landlord. (*Sunasack v. Morey*, 196 Ill. 569; *Borggard v. Gale*, 205 Ill. 511; *Soibel v. Oconte Co.*, 299 Ill. App. 518; *Clerken v. Cohen*, 315 Ill. App. 222, and *Elbers v. Standard Oil Co.*, 331 Ill. App. 207.) The case last cited distinguishes between liability of a landlord where the tenant is suing and where the suit is by third persons.

We are aware that some of the cases cited by plaintiffs, particularly *Woods v. Lawndale Theater Corp., Inc.*, 302 Ill. App. 570, use language that tends to support plaintiffs' theory, but plaintiffs have cited no cases, and we have found none, supporting a judgment for the tenant under the theory that the landlord "could have known by the exercise of ordinary care and caution" of an alleged latent defect. All of the cases relied upon by plaintiffs in their brief, except *Woods v. Lawndale Theater Corp., Inc., supra,* involve the rights of third parties against the owner and not

the rights of tenants or their licensees or invitees. In this last mentioned case the plaintiff was an employee of the tenant and the Appellate Court, regardless of what language was used, actually held the landlord not liable.

Plaintiffs contend that the judgments ought to stand because they are supported by the allegations and proofs under paragraph 6 of each count of the complaint setting up the city ordinance hereinbefore referred to, and a violation of said ordinance. Defendant's position in this respect is that the ordinance is not applicable to the liability of the landlord towards the tenant, and is a public health measure, only. The legality or validity of the ordinance is not questioned and therefore its interpretation, only, is before us.

Ordinances are treated the same as statutes in determining what rights are secured thereby (*U. S. Brewing Co. v. Stoltenberg,* 211 Ill. 531) and in their construction (*Dean Milk Co. v. City of Chicago,* 385 Ill. 565). It is a familiar rule that statutes in derogation of the common law cannot be construed as changing the common law beyond what is expressed by the words of such statutes or is necessarily implied from what is expressed, and that it will not be presumed that an innovation was intended further than that which was specified or clearly to be implied. (*Walter v. Northern Ins. Co. of New York,* 370 Ill. 283, at 288.)

We have heretofore stated the common-law rule regarding this subject and pointed out that the basis of the landlord's liability, if any, is fraudulent concealment. If the judgments were to be sustained under paragraph 6 of each count of the complaint the basis of the liability would be negligence. Negligence and fraudulent concealment are distinct and different causes of action. A careful reading of the ordinance shows that it imposes an obligation upon owners of

property used for dwellings, factory or business purposes that did not exist at common law, and provides penalties for its violation. The ordinance contains no language, however, that shows a legislative intent to create a new and different cause of action for negligence in favor of a tenant, or shows such an intent to be clearly implied. The ordinance does not attempt to regulate, control or modify the contractural relationship between landlord and tenant in any respect, or to change the common-law rule. We hold that the ordinance does not give to a tenant a new or different right of action than existed at common law. (*Palmigiani v. D'Argenio*, 234 Mass. 434, 125 N. E. 592; *Johnson v. Carter*, 218 Iowa 587, 255 N. W. 864.)

██ The circuit court, in passing upon a motion for directed verdict at the close of all evidence was required to determine that the ordinance tended to support the cause of action and not merely the allegations of the complaint. (*Wallner v. Chicago Consol. Traction Co.*, 245 Ill. 148.) Since there was no evidence tending to support one necessary element of the cause of action, namely, knowledge of the alleged defect, and since the ordinance created no liability in favor of plaintiffs different from the common law, it was error for the lower court to refuse the motions for directed verdicts at the close of all evidence, and in refusing defendant's motions for judgments notwithstanding the verdicts.

██ Plaintiffs argue that since defendant submitted instructions to the jury that adopted the theory of liability as contended for by plaintiffs she therefore tried her case upon that theory in the lower court and cannot present in this court a theory inconsistent therewith. In *Wallner v. Chicago Consol. Traction Co., supra*, it was held that instructions to the jury, given after refusal by the court to direct a verdict, did not operate as a waiver of any contention made by the request for directed verdict; that if the party pro-

ceeded further, after denial of the motion, he "must do so according to the court's view of the law, and does not waive the right to question that view in the Appellate Court."

For the reasons hereinabove set forth the judgments of the lower court in favor of plaintiffs are reversed.

*Reversed.*

CULBERTSON, P. J., and SCHEINEMAN, J., concur.