Aaron Weintraub et al., Trading as Anchor Window Cleaning Company, Appellees, v. John B. Sexton and Company, Appellant.

Gen. No. 43,172.

Heard in the third division of this court for the first district at the October term, 1944. Opinion filed December 20, 1945. Released for publication January 8, 1946.

B. S. QUIGLEY, of Chicago, for appellant; EZRA L. D'ISA, of Chicago, of counsel.

KAMIN, GLEASON & KAMIN, of Chicago, for appellees.

MR. PRESIDING JUSTICE KILEY delivered the opinion of the court.

This is an action under Section 29 of the Workmen's Compensation Act, Chap. 48, Par. 166, Ill. Rev. Stats. [Jones Ill. Stats. Ann. 143.44], based upon an injury to plaintiff's employee while he was engaged in washing windows of defendant's building in Chicago. The injured employee was paid an award under the Act. The jury found defendant guilty and assessed plaintiffs' damages at $4,500. Defendant has appealed.

Hodges, the injured employee, was an experienced window washer at the time of the accident in May, 1941. For more than three years he had been assigned to defendant's six story building at 500 North Orleans Street, where he worked, usually alone, twice a month. The window relevant to our consideration was above the main entrance and about 20 feet above the sidewalk. It was one of a set of three mezzanine windows

facing east, recessed between brick panels. Each window had its own frame. The southernmost of the three opened from within a stockroom, the other two opened from within a mezzanine hallway. The former was separated from the latter two by a wall. We shall refer hereafter only to the two hallway windows.

The windows were about 8 or 10 feet in height and the inside sill was about 5 feet 9 inches above the floor. Each consisted of a lower and upper sash which moved independently. In cleaning the windows on the inside Hodges used a 12 foot ladder. In washing the outside of the windows he used a safety belt. This was made of leather carrying two ropes, one end of each fastened to the belt and the other end carrying a metal safety catch. In practice each of these catches was attached to a corresponding metal hook set into either side of the outside window frame. This permitted Hodges freedom for both hands, in washing the outside windows, being held secure by the ropes fastened to the hooks and his belt.

To reach the outside sill Hodges faced the window, his right knee on the inside sill and his left foot on the ladder, and raised the lower sash. He then grasped the right handhold attached to the lower part of the lower window sash with his right hand, took the rope looped to the left side of his belt in his left hand and reached out through the opening to fasten the catch to the hook on the south side of the outside frame. While doing this the lower part of the lower sash and the metal hooks in the window frame were about level with his head. Fastening the safety catch to the hook required that Hodges turn his body somewhat to the south as he leaned through the opening. As he did this 60 percent of his weight was upon the metal handhold.

After fastening the one hook, his weight was transferred to the rope and he passed through the opening to the outside sill and fastened the other safety catch

to the hook in the north outer frame. He followed this custom at least 50 times at defendant's building.

May 21, 1941, the day of the accident, Hodges worked at the building from 5:00 until 10:30 a. m. He followed his customary procedure. As he leaned through the opening of the northernmost window to fasten the left safety hook to the outside frame, the handhold grasped in his right hand gave way. He somersaulted to the pavement and was injured. The handhold came off the sash and was in his right hand when he fell.

Hodges says he noticed that that particular handhold was loose on one side three months before the accident. He reported it and two weeks later it was hanging. He reported it to the janitor and told him to put in 2 inch screws instead of 1 inch. It was repaired with 1 inch screws. He used the handhold two weeks or so before the accident and it held him. It looked all right the day of the accident. He "tested" it and confirmed his view. One inch screws in the handhold when he fell indicated that his advice to the janitor had not been heeded.

No testimony was introduced by the defendant. It admitted maintaining the building. It made motions for a directed verdict and for judgment notwithstanding the verdict. The court denied both. Defendant contends this was error and that judgment should have been entered in its favor. This poses a question of law, whether under the evidence and legal inferences considered most strongly in plaintiff's favor, defendant was guilty of negligence.

It is agreed that plaintiffs are not, if Hodges would not be, entitled to recover under the evidence.

Plaintiff contends the record does not disclose Hodges' demonstration of his "rhythm and coordination" in fastening the safety catch to the hook. Since we must decide the case on the question whether Hodges should have used the handhold to support his weight, the demonstration could not be of much help.

It may have enabled the jury to better visualize the facts. We are to determine whether the case should have gone to the jury.

Plaintiff says that, in view of Hodges' three and a half year assignment, defendant's servants must have known how Hodges performed his work. The only evidence on the subject is that defendant's maintenance foreman, called by plaintiff, did not know how Hodges performed his work. Plaintiff also refers us to the testimony that Hodges told defendant's janitor that one inch screws were not long enough to properly fasten the handhold. We have examined the record closely for evidence that Hodges told the janitor one inch screws were not long enough to fasten the handhold sufficiently secure to bear 60 percent of Hodges' weight. We fail to find such evidence. We cannot infer that the janitor knew Hodges meant what plaintiff suggests. There was no proof that the janitor knew how Hodges performed his work. We find, therefore, there is no evidence that defendant knew through its servants that Hodges was using the handhold in the manner to which he testified.

The question is narrowed to the inquiry whether defendant was negligent in failing to foresee that Hodges would use the handhold in the manner described and in failing to render it sufficiently secure for his protection as he held it to fasten the safety catch. If there was no obligation on defendant to fasten the handhold so as to bear Hodges' weight, in view of the lack of notice, then the use of one inch screws was proper for it seems admitted the handholds were sufficient for the purpose of raising and lowering the sash.

Defendant owed Hodges the duty of providing a reasonably safe place to work and of warning him against danger of which it knew, or should have known, and of which he was not, unless he should have been, aware and which it should have anticipated he would encounter in his work. *National Builders Bank of*

*Chicago v. Schuham,* 319 Ill. App. 546; 38 Amer. Juris. 754.

■ We must decide whether defendant as a reasonably prudent person should have anticipated danger to Hodges from his use of the handhold to support the greater part of his weight as he leaned through the frame to fasten the safety catch. If it should have, then defendant is guilty of negligence. If reasonable men would differ on the question it was for the jury to decide.

Plaintiff cites *Alexander v. Scoville's Village, Inc.,* 278 N. Y. Supp. 201, decided in 1935 by a New York Supreme Court, Appellate Division. The facts are not given, the opinion merely states that plaintiff died from injuries caused by a fall from a window he was washing. The court held that there was evidence in the record which supported the jury's finding that after notice defendant agreed to and made repairs to the window, but did so negligently. We infer that the defendant had notice of the use to which the window was being put. Because of our finding, however, that there was no notice to the defendant here of the use to which Hodges was putting the handhold, and, therefore, no knowledge of the extent of the repair needed, we do not find this case helpful.

Furthermore, in view of our finding of the lack of knowledge of defendant, if the use to which Hodges put the handhold was foreign to its intended use or uses, plaintiff should not recover. *Walsh v. Frey,* 101 N. Y. Supp. 774; *Glain v. Sparandeo* [119 La. 339], 44 So. Rep. 120; *Carroll v. Intercolonial Club of Boston* [243 Mass. 380], 137 N. E. Rep. 656; *DeMotte, et al. v. Arkell* [77 Cal. App. 610], 247 Pac. 254; *LaVeer v. Hanke Iron & Wire Works,* 187 Ill. App. 481; *Miller v. El Mirasol,* 297 N. Y. S. 380. While these are generally Landlord and Tenant cases, the principle, nevertheless, can apply here.

Defendant cites *Culbreath v. M. Kutz Co.* [37 Ga. App. 425], 140 S. E. 419, decided in 1927 by the Court of Appeals of Georgia. In that case the window washer had stood on the outside sill supporting himself by holding to the top of a window sash. The frame, guides and sash gave way and he was injured. In affirming a decision for defendants on pleadings, the court of appeals took judicial notice that the use by plaintiff was a foreign use-of the sash and decided that the indulgence of a custom of a foreign use by a particular trade did not impose upon the defendant the duty to anticipate that use; and that without knowledge of the use and notice of defects, in the light of the use, there was no liability. If that use of a window sash is a foreign use, then with greater force was Hodges' use of the handhold foreign.

Owners of buildings must anticipate that windows will become dirty and have to be cleaned and, where prudence requires, they must anticipate that window washers, will have to clean the outside of the windows by standing on the outside sills. They must foresee that a window washer cannot with safety stand unsupported while washing windows on outside sills. They must, therefore, in accordance with the general rule use reasonable care in providing safe working conditions for the window washers. It is pursuant to this necessary foresight, we assume, that hooks sufficiently strong to support window washers' weights are provided to accommodate the safety catches at the ends of the ropes attached to safety belts. These safety hooks are not attached to the window sashes but to the framework of the window if not to the building proper. The nature of the movable sash does not lend itself to that use.

Ordinarily, handholds are on only the lower sash. Certainly, their use to raise and lower the sashes is the primary intention. If Hodges' use could be said to be a secondary intention, handholds would have to be

made and secured to withstand the leverage and weight involved in that use. Builders generally do not so make or secure them. New types of handholds appear to fall far short of that use. They are either recessed in the sash, or made simply of a small curved metal projection sufficient to accommodate the fingers. ·We do not believe the use to which Hodges put the handhold in this case can be said to be consistent with the nature of handholds.

We can understand that a. window washer might complain in a particular case that a handhold of some kind should have been provided to support his weight as he leans through an opening as Hodges did here. It might be shown that there would be danger of a window washer's hand slipping, or his being unable to hold steadily on to the bare framework or inside wall. That is not the case here, however. No other contention is made but that the handhold on the sash should have borne the weight Hodges put on it. We cannot hold that defendant was negligent in failing to foresee Hodges' use, even if customary to his trade, if the use was unreasonable. We agree with the Georgia court that, if Hodges' use could not fairly be anticipated, the "daring" of the trade in indulging the custom, should not alter the principle.

Hodges expected the window sash handhold in the instant case-to bear 60 percent of his weight as he leaned through the opening to fasten the safety catch. Sixty percent of another window washer's weight might be equal to, or total that of, Hodges' weight. A prudent. owner should anticipate that a window washer must, in some reasonable manner, reach the outside sill so as to fasten the catch to the hook. Defendant here was not bound, however, to anticipate the use indulged by Hodges. That use was unreasonable.

. The *Georgia case* pointed out that. the plaintiff there should have tested the sash before using it. We wish to point out that in this case a true test involved the

same risk as the use. Plaintiff had used the handhold successfully on previous occasions. This may be said to have been the test. This fact, however, does not change our view. It may be that the one inch screws were sufficient to stand the foreign use for a while.

The only Illinois case cited which resembles the case at bar is *National Builders Bank of Chicago v. Schuham*, 319 Ill. App. 546, cited here on another point. The question presented here was not considered in that case.

We believe there is no evidence of negligence on the part of defendant. We need consider nothing further.

The judgment of the Circuit Court is reversed and the cause is remanded with directions to enter judgment for defendant.

*Reversed and remanded with directions.*

LEWE and BURKE, JJ., concur.