Frank M. Hendricks, Plaintiff-Appellee, v. Socony Mobil Oil Company, Inc., et al., Defendants-Appellants.

## Gen. No. 11,721.

Second District, First Division.
December 26, 1963.

Tenney, Bentley, Guthrie & Howell, all of Chicago (Kenneth B. Hawkins and John P. Forester, of counsel), for appellant, Socony Mobil Oil Co., Inc., and Tom L. Yates, of Chicago (L. J. Locke, of counsel), for appellants, Lester H. Keepper and Martha Keepper.

Riordan & Brown, and Philip E. Howard, of Chicago (John J. Riordan, Gerald M. Chapman and David K. Anderson, of counsel), for appellee.

DOVE, J.

Socony Mobil Oil Company, Inc. and Lester H. Keepper and Martha Keepper appeal from a judgment rendered against them, upon a verdict of a jury, for $46,500 in favor of the plaintiff, Frank M. Hendricks.

The count of the complaint upon which the cause went to trial alleged that the plaintiff was injured at a gasoline filling station while attempting to repair some flood lights on the top of a steel pole, which broke off at its base, causing the plaintiff and the ladder on which he was standing, and which he had leaned against the pole, to fall.

The defendants to the action against whom a judgment was sought, were Socony Mobil Oil Company, Inc., hereinafter referred to as Socony, which was the wholesale supplier of petroleum products to the station, Carlos W. Smith, who was the tenant in possession and the operator of the filling station, Lester Keepper and Martha Keepper, who were the owners of the land where the station was located, and George C. Peterson Company.

The complaint alleged that the defendants were the owners, lessors or lessees of certain described premises located on the south side of Skokie Highway in the Village of Gurnee, Lake County, Illinois; that the defendants conducted a restaurant and gasoline filling station on said premises; that there was affixed to said premises a high metal pole, at the top of which was affixed certain electrical fixtures for the purpose of flood lighting the area upon which the business activities of the defendants were conducted.

The complaint then alleged that the defendants and each or all of them entered into a contract with Orville Cote, doing business as Cote Electric Company to repair the electrical connections and lighting fixtures

45

on this metal pole; that plaintiff was an employee of Cote Electrical Company, and, on October 30, 1957, was engaged as an electrician, and in the course of his employment, was working on an extension ladder alongside the light pole.

The complaint then averred, among other things, that it was the duty of the defendants to provide plaintiff with a reasonably safe place to perform his work as an electrician upon said premises; that defendants failed to protect the pole from moisture, and allowed water to collect at the base of the pole, resulting in the pole becoming weak and unsafe, due to the rusting thereof; that defendants failed to maintain said pole in a safe condition; and that plaintiff, while so working on said extension ladder, was caused to fall from the ladder to the terrain below, and thereby suffered extensive temporary and permanent injuries.

Lester Keepper and Martha Keepper filed their separate answers in which they admitted the ownership of a portion of the property described in the complaint, but averred that they were not in control thereof. By their answer they averred that they had leased the premises to Carlos W. Smith and Evelyn Smith, and that the light pole and the other fixtures and equipment of the filling station was the property, and under the control, of the George C. Peterson Company.

Socony Mobil Oil Company and the George C. Peterson Company filed their joint answer in which they averred that the George C. Peterson Company was, for many years prior to September, 1957, a distributor of the products of Socony; that in the month of September, 1957, the George C. Peterson Company assigned to Socony, for a valuable consideration, all its rights, title, interests and assets to Socony, and that Socony assumed all the obligations of the Peterson Company, and on October 9, 1957, the Peterson Company was

46

liquidated and dissolved, and surrendered its right to do business in Illinois.

These defendants, by their answer, denied that they were the owners, lessors, lessees, or agents or servants of the owners, lessors or lessees of said premises, denied all allegations of negligence, and averred that on September 12, 1957, Socony entered into a written contract with Carlos W. Smith by the terms of which they loaned to Smith, at his request, two gasoline tanks, pumps, air compressors, flood lights, and other described equipment; that upon this equipment, Smith agreed to pay all taxes and keep the same in good repair. In consideration of so doing, the equipment was to be used solely for Socony's products. This answer denied that these defendants maintained or had under their control this light pole or any of the fixtures or equipment on or about this filling station. These defendants denied all charges of negligence, and averred that plaintiff failed to exercise ordinary care and caution for his own safety at the time he was injured.

The separate answer of Carlos W. Smith and Evelyn Smith stated that they rented the premises described in the complaint; that they had no control over the maintenance, upkeep, or dominion over the gasoline pumps, signs, electrical equipment, or light pole; that all of the equipment, including the light pole, was the property of, and under the control of, the George C. Peterson Company; that these defendants had nothing to do with this light pole or with the ladder used by plaintiff, or with inducing, causing, or hiring the plaintiff to enter upon the premises for any purpose.

The issues made by the pleadings were submitted to a jury, resulting in a verdict in favor of the plaintiff and against Socony, George C. Peterson Company, Lester Keepper, and Martha Keepper. The jury found

the defendant, Carlos W. Smith not guilty and answered in the negative this special interrogatory: "Did George C. Peterson Company, on October 30, 1957, own, lease, manage or control the pole in question?" The jury answered in the affirmative this interrogatory: "Did Socony Oil Company, Inc., on October 30, 1957, own, lease, manage, or control the pole in question?" The jury found the defendant Carlos W. Smith not guilty. The trial court sustained the post-trial motion of George C. Peterson Company and rendered judgment, notwithstanding the verdict, in favor of the defendant, George C. Peterson Company, in bar of the action against this defendant.

The post-trial motions of Lester Keepper and Martha Keepper, and Socony, were denied and the record is before us for review upon the appeal of Lester Keepper, Martha Keepper, and Socony Mobil Oil Company.

It was the theory of the plaintiff in the lower court and he contends here that the evidence discloses that Lester Keepper and Martha Keepper were the owners of the premises upon which plaintiff sustained his injuries; that he was rightfully on said premises as an invitee for a purpose connected with the business which these owners permitted to be conducted thereon; that these defendants owed a duty to plaintiff to exercise due care to keep the premises in a reasonably safe condition; that they breached this duty by failing to warn plaintiff of a defective and dangerous condition which patently existed at the time the premises were leased and, at the time of the injury to plaintiff, the defective and dangerous condition was latent and not known to the plaintiff and could not have been discovered by him by a reasonable examination of the premises.

It is the contention of Lester H. and Martha Keepper, the owners of the premises, that they were not

in possession or control of the premises; that plaintiff was an invitee or licensee of the tenant, Carlos W. Smith; that the only duty they owed to the tenant or to his invitee or licensee was to disclose to the tenant, at the time of the leasing, any latent danger known to them and not known to the tenant; that there is no evidence that the condition of the pole was other than safe at the time of the lease and if it was not, its condition was latent and not known to these defendants.

The record discloses that these defendants and Carlos W. Smith, entered into a written instrument by the provisions of which Mr. & Mrs. Keepper leased the premises, upon which this light pole was erected, to Carlos W. Smith at a fixed monthly rental. The lease was not produced upon the trial, and there was evidence that it could not be located. Under this lease, Smith had been in possession of the premises about one year before the plaintiff was injured. Smith had an equipment loan and a merchandising agreement with Socony, by the provisions of which Socony maintained the equipment and Smith was obligated to use only products of Socony. The pole was a part of the equipment. It was a steel pole 4 to 6 inches in diameter, some 20 feet high and imbedded in the concrete pavement upon which the gasoline pump and other equipment of the station rested. This pole supported two electric flood lights. These lights were not functioning. Mr. Smith complained to Socony and Socony employed Cote Electric Company to make the necessary repairs. Plaintiff was an employee of the Cote Electric Company and was on the premises and making the necessary repairs, using a twenty-five foot extension ladder which he leaned against the pole which supported the flood lights. In making his second ascent, the pole broke off at the concrete base, causing plaintiff to fall. The charge of the Cote Electric Com-

pany for services rendered by plaintiff in making the repairs to the flood lights was paid to the Cote Electric Company, plaintiff's employer, by Socony.

Carlos W. Smith testified that he was the operator of this station; that the pole which was a steel pipe, tapered from six inches at the bottom to four inches at the top, was on the premises when he went into possession of the leased premises; that it was set in a cement base flush with the ground; that the base was about two feet wide with a little ridge in the cement; that when he leased the premises he had noticed the pole, and that it was rusty at its base, and he could see the rust; that it needed repairing, and he so informed Mr. Olson, and Mr. Olson said he would take care of it; that after the pole fell, he examined it and found "it was rusted thin."

Mr. Smith further testified that during the time the Peterson Company supplied him with gasoline, oil, grease, and anti-freeze, it also supplied and paid for the light bulbs for all five of the floodlight poles and repaired all the outside lights and after the sale to Socony, the same relationship continued; that before Peterson sold to Socony, he, Smith, dealt with Roy Olson and that after Peterson sold, Mr. Olson went to work for Socony and he, Smith, continued to deal with Olson; that while Olson was working for Peterson, Smith had a conference with him regarding doing some maintenance work on the five outside poles; that Smith told Olson that they needed repairing and painting; that Olson told Smith that he, Olson, would take care of them and paint them. As abstracted, this witness continued: "Yes, Olson told me not to touch them. He told me they had a maintenance man. All I had to do was to call the office, that they would send a man out to maintain them, fix them.—I don't remember that the pole on which Mr. Hendricks was working was ever painted. It wasn't painted that I know

50

of, while I was there. I had been having some trouble with that pole all summer. I called in about July and talked to Mr. Olson. He told me he was going to have it fixed." At this point the Court inquired of the witness what the trouble was, and the witness replied that the lights would not burn. The witness then continued: "Well, they never did get it fixed. He sent somebody out, but they never did work right. A day or two before the accident I called again. I talked to Olson. I told him I wanted the light fixed, and he said they would get somebody out there to fix it. Then Mr. Hendricks showed up. I don't know, probably a couple of days, two or three days. Mr. Hendricks came out in the morning. It was early. Two of them came out and I was in the station at the time. They asked me where the pole that I was having trouble with was. I pointed it out to them. I told them that it wouldn't burn. I didn't tell them anything else about the pole. I just told them it needed fixing, that the light didn't work on it. I did not see him put his ladder up against the pole. I went back in the station.—Yes, I did know who owned the equipment because Mr. Olson told me that they owned it.—Socony did maintain the pumps. I don't remember just when he (Olson) told me not to touch the pumps, but he told me that they did all the maintenance work when I first went and talked to him, when I first took over. They did all the maintenance work on the pumps and the light poles and the island. No, they did not maintain the building. I maintained my own building."

Roy Olson testified that he was branch manager and territory representative of George C. Peterson Company, and had been in its employ more than thirty-three years; that prior to the dissolution of the Peterson Company, and at the time its assets were taken over by Socony, Mr. Olson became an employee of Socony. He testified that he was familiar with the

service station and that the light pole had been thereon for more than ten years; that shortly prior to October 30, 1957, he received a call from Mr. Smith, who requested that the lights on the pole be fixed, and after a second call from Smith, Mr. Olson contacted Cote Electric Company and engaged it to make the necessary repairs. Mr. Olson further testified that Mr. Smith never mentioned anything to him about the condition of the pole and he did not recall that, at any time prior to the accident, Mr. Smith ever told him that the pole was rusty at its base.

It further appears that the Grandview Service Station premises were being used as a gas filling station when acquired by Mr. and Mrs. Keepper on November 30, 1954; that their title was subject to an easement requiring the operator of the filling station to use only the products of Socony Mobil Oil Company, and for more than one year prior to the accident, Mr. and Mrs. Keepper leased the premises to Carlos W. Smith at a fixed monthly rental, and Smith went into possession of the premises and personally operated the station. At the time of the accident, and prior thereto, Socony owned the gas pumps, the steel pole which supported the flood lights, and station equipment, but Smith had an equipment-loan agreement with Socony. The Keeppers had no control of the premises or any interest in the operation of the business. The jury specifically found that Socony did own, lease, manage or control the pole in question on the date plaintiff was injured.

Counsel for appellee agree that the general rule is, that a landlord is not liable for injuries sustained on premises leased to a tenant and under the tenant's control. (Woods v. Lawndale Enterprises, Inc., 302 Ill App 570, 573, 24 NE2d 193.) Counsel argue, however, that the evidence discloses that the pole was defective at the time Keeppers leased the premises to

Smith; that it was apparent to Smith at that time, but because a coat of paint had been applied to the pole, the defective condition of the pole became latent at the time of the accident; that under these circumstances, insist counsel, Mr. and Mrs. Keepper must be held to have had constructive knowledge of the condition of the pole at the time of the accident. If the pole was defective at the time Smith went into possession under his lease, and Smith had full knowledge of its condition, and the defect was latent at the time of the accident, Mr. and Mrs. Keepper, not being in possession or control would not, under the general rule be liable unless they were guilty of fraud or deceit in inducing Smith to execute the lease.

A tenant does have a right of action against the landlord for injuries resulting from a latent defect only when it appears that the landlord had actual knowledge of such defect and the defect is one which a tenant could not be expected to discover upon reasonable inspection, and when the landlord fails to disclose to the tenant his knowledge of the defect. The basis of such liability is fraudulent concealment by the landlord, and this necessarily implies knowledge on the part of the landlord. (Hamilton v. Baugh, 335 Ill App 346, 350, 82 NE2d 196.)

The instant case is not an action by Smith, the tenant, against his landlord, the Keeppers. Elbers v. Standard Oil Co., 331 Ill App 207, 72 NE2d 874 distinguishes between the liability of a landlord, where the tenant is suing, and where the suit is by a third person. The duties and liabilities of a landlord to persons on leased premises by the license of the tenant are the same as those owed to the tenant himself. For this purpose they stand in his shoes. Licensees of the tenant are on the premises as licensees of the tenant and not of the landlord. The employee or licensee of the tenant is usually held to be so identified with the

tenant that his right of recovery for injury as against the landlord, is the same as that of the tenant would be, had he, the tenant, suffered the injury. The rule of caveat emptor applies to licensees of the tenant for injuries received from defects on the premises existing at the time of the lease, just as it applies where the injured person is the tenant himself. The landlord does not, by making the lease, impliedly warrant that the premises are safe, or fit for the use to which the lessee may intend to put them. (16 RCL Landlord and Tenant, sec 588, quoted in Elbers v. Standard Oil Co., 331 Ill App 207, 224, 172 NE2d 874.)

In the instant case, plaintiff was on these premises as an employee of Cote Electric Company, and it was Socony which employed Cote Electric Company to repair the lights on this pole. The duty the Keeppers owed plaintiff was the same as they owed Smith, their tenant, and that duty under the facts and circumstances disclosed by this record, was not to fraudulently conceal from him their knowledge of any latent danger on the premises actually known to them and not known to the tenant or not likely to be observed by him. The evidence is that the condition of the pole was known to Smith at the time he leased the premises, and at all times thereafter, and that the condition of the pole was latent and not known to the Keeppers.

■ The judgment appealed from is a joint judgment against the owners, Mr. and Mrs. Keepper, who were out of possession of the leased premises, and Socony Mobil Oil Company, which the jury found did own, lease, manage or control the pole in question on the date plaintiff was injured. The uncontroverted facts disclosed by this record and the applicable law preclude plaintiff from a recovery against the Keeppers, and the trial court erred in overruling the motion of these defendants for an instructed verdict or

in not granting their post-trial motion for judgment notwithstanding the verdict.

 Counsel for Socony argue that this company was a wholesaler of petroleum products to Smith, who was in actual possession of the premises operating a service station on his own account; that Smith was not Socony's employee or agent but an independent dealer, and as Socony had no duty to maintain the pole, it could not, under the evidence, be held liable to plaintiff for any injuries he sustained, and the jury should have been so instructed.

The plant and equipment record of Socony do not reveal that the George C. Peterson Company owned or turned over any poles to Socony on September 12, 1957. The testimony of Mrs. Keepper is that the premises were purchased from Mr. and Mrs. Charles Coufol; that she and her husband took title, subject to the lease of the Peterson Company; and that the gas station building and the pumps were on the premises at that time. As abstracted, this witness continued: "I understood I didn't own the pumps, and I understood we could not use any other gasoline products or anything except from the George C. Peterson Company, and they owned all the poles. We didn't own any poles. We didn't own any lights, as far as the poles were concerned, the pumps or the oil tanks. Yes, when we bought the premises we owned the building, we owned the little cabins in back and as far as any of the pumps or any of the Mobil signs out in front of any of the floodlight poles, it was our understanding we did not own them. Yes, George C. Peterson Company owned all those."

Counsel for Socony argue that the land upon which this pole stood was owned by Mr. and Mrs. Keepper; that Carlos Smith was their tenant in actual possession of the property; that Socony, not being in possession of the premises owed no duty to plaintiff to

55

maintain them in a safe condition. The record shows that Socony exerted some dominion over this station and its equipment. The jury found that the pole was under the control of Socony, and the evidence sustains this finding. Socony assumed the duty of maintaining the lights upon this pole. Socony contracted with Cote Electric Company to repair these lights, and paid for the repairs made. Socony gave the invitation to plaintiff to come upon these premises, and he was its employee and engaged in work for Socony when he received the injuries sued for. Under these and other facts and circumstances in evidence, Socony owed plaintiff the duty of providing him with a reasonably safe place to work, and of warning him against danger of which it knew, or should have known, and of which he was not aware, and which Socony should have anticipated he would encounter in his work. (Weintraub v. John B. Sexton & Co., 327 Ill App 348, 352, 64 NE 2d 235.)

It was the duty of Socony to exercise reasonable care to have the premises in a safe condition for the work it ordered, unless the defects responsible for the injury were known to the plaintiff or his employer, Cote Electric Company. (Elbers v. Standard Oil Co., 331 Ill App 207, 225, 172 NE2d 874.) It was for the jury to determine whether Socony should have anticipated danger to plaintiff from his use of an extension ladder, supporting his weight while leaning against this pole as he was engaged in making the repairs. (Weintraub v. John B. Sexton & Co., 327 Ill App 348, 354, 64 NE2d 235.)

Socony has also argued other points in regard to instructions, admission of evidence, admissions in the pleadings, contributory negligence and excessiveness of the jury's verdict. We have considered these matters, but do not believe any reversible error, so far as

Socony is concerned, is shown by the record, which necessitates the reversal of this judgment.

The judgment against Socony is affirmed. The judgment against Lester H. Keepper and Martha Keepper is reversed.

Affirmed in part, reversed in part.

McNEAL, P. J. and SMITH, J., concur.