James Starkey, Plaintiff-Appellant, v. Brown Oil Company, a Corporation, and Phillips Petroleum Company, a Corporation, Defendants-Appellees.

Gen. No. 65–59.

Third District.

September 7, 1966.

Rehearing denied October 7, 1966.

Peter F. Ferracuti, of Ottawa, for appellant.

Hupp & Irion, Berry & O'Conor, and Zwanzig, Thompson, Lanuti, Bower & Zwanzig, all of Ottawa, for appellees.

STOUDER, J.

This is an appeal from an order of court granting judgment for Defendant notwithstanding the verdict for Plaintiff. The facts, which follow, are not in dispute.

Plaintiff, Appellant herein, while painting a pole at a service station on May 10, 1963, was injured when the pole broke, causing the ladder on which Plaintiff was standing, to fall. The service station was operated by Defendant, George Small, on a month-to-month verbal agreement with Defendant, Brown Oil Company, the owner of the premises. Brown Oil Company was a jobber for the exclusive distribution of the products of Phillips Petroleum Company, a third Defendant, to service stations in and around Ottawa, Illinois, including Small's Service Station. The pole in question was owned by Brown Oil Company. By another contract between Phillips Co. and Brown Co. called "Jobber's Painting Contract," Phillips agreed to paint Brown Oil Co. sign poles. Although the service station, where the pole was maintained, was leased by Brown Co. to George Small on a month-to-month lease, the evidence indicates clearly that Brown Co. retained control over the area of its poles and signs.

On April 4, 1963, Valley Painting and Decorating Service, Plaintiff's employer, entered into a written contract with Phillips to paint the pole. Plaintiff with a coworker, started painting at the station shortly before the accident.

The pole in question was a hollow, ungalvanized, black iron pipe about twenty-eight feet long and tapering from six inches at the base to two inches at the top. It was

attached at the base to a four-foot pier or drum by four bolts and had a side arm to hold a sign with a hole two inches in diameter in the pole opposite the side arm. The exterior of the pole was painted white and there were rust spots on the outside in the area of the bolts.

The pole had previously been situated at another filling station where it had been installed sometime prior to 1944. Mr. Hill, President of Brown Oil, purchased the service station in 1944 thereafter conveying it to Brown Oil Co. upon its organization in 1947. On December 12, 1960, the pole had been moved and erected at the scene of the accident and on January 23, 1961, had been taken down in order that the sign which it supported could be raised by setting the pole on the four-foot pier or drum. The pole could be removed and replaced with a truck crane.

At the time the pole was moved in 1960 and when it was re-erected in 1961 some rust was observed by the person who handled the pole. He stated that at that time, in his opinion, the pole was in condition to be re-installed. He further testified that his opinion was based only on visual observation, that he performed no other tests to determine the condition of the pole. The President of Brown Oil Company testified that he had observed the pole in passing and saw nothing wrong with it. Plaintiff and his coworker also inspected the exterior of the pole just prior to commencing the painting operation and saw nothing to indicate that the pole was unsafe.

The usual and customary practice in painting poles of this type is for the painter to support an extension ladder against the pole and ascend the pole to paint. As Plaintiff was engaged in painting the pole, it snapped eight to ten inches from the base and Plaintiff fell to the pavement twenty-five to thirty feet below. The pole at the site of the break, was very rusty on the interior,

the sound metal on the exterior being described as paper thin.

The principal controverted facts involved the questions of what care Defendant had taken to preserve and maintain the pole and to inspect it; when the hole opposite the side arm had been made, and whether it was covered or uncovered; and what Defendant should reasonably have been expected to do to anticipate and prevent the injury.

Suit was filed against Small as tenant operator and thereafter voluntarily dismissed as to him, against Brown Oil Company as owner of the premises, and against Phillips Petroleum Company as being in control of the equipment for the painting operation. The complaint contained two counts, one based on the theory of general negligence under the maxim res ipsa loquitur and the other on the theory of specific common-law negligence. At the conclusion of Plaintiff's case the lower court allowed a motion by Phillips Petroleum Company for a directed verdict on both counts, and a motion by Brown Oil Company for a directed verdict on the res ipsa count.

At the conclusion of all the evidence, the jury returned a verdict for Plaintiff and against Defendant, Brown Oil Company, in the amount of $25,000. Brown Oil Company then filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial which motion was allowed by the trial court. In the order granting Defendant's motion, the court below found that Plaintiff had produced no evidence of negligence on the part of Brown Oil Company and further held that National Builders Bank of Chicago v. Schuham, 319 Ill App 546, 49 NE2d 825, was controlling. Plaintiff appeals from this order and from the order directing a verdict for Phillips Petroleum Company, asking that the first be reversed and the verdict be reinstated or in the alternative a new trial granted, and that the second be reversed and a new trial granted.

We shall first consider the propriety of the appeal from the order directing a verdict in favor of Phillips Petroleum Company. Chapter 110, § 68.1(2), Ill Rev Stats, provides "Relief desired after trial in jury cases, heretofore sought by reserved motions for directed verdict or motions for judgment non obstante veredicto, for judgment notwithstanding the verdict, in arrest of judgment or for new trial, must be sought in a single post-trial motion. . . . The post-trial motion must contain the points relied upon, particularly specifying the grounds in support thereof, and must state the relief desired, as for example, the entry of a judgment, the granting of a new trial, or other appropriate relief. . . . A party may not urge as error on review of the ruling on his post-trial motion any point, ground or relief not particularly specified in the motion." Section 68.1(5) provides "Any party who fails to seek a new trial in his post-trial motion, either conditionally or unconditionally, as herein provided, waives the right to apply for a new trial, except in cases in which the jury has failed to reach a verdict."

 Plaintiff argues that the ruling of the trial court on a motion for directed verdict is a decision made in the progress of the trial and subject to review by a court of appeal without a motion for a new trial. In our opinion this argument begs the question. Were we to review the lower court's ruling on the motion for directed verdict and find such ruling in error, this, in itself would be of no benefit to Plaintiff. Plaintiff desires further that we grant him the relief of a new trial and this we cannot do in the absence of a post-trial motion praying for such relief. Section 68.1(2) and (5) we deem to be mandatory. (Knab v. Alden's Irving Park, Inc., 49 Ill App2d 371, 199 NE2d 815; County Board of School Trustees of Macon County v. Batchelder, et al., 7 Ill2d 178, 130 NE2d 175, and Perez v. The Baltimore & Ohio R. Co., et al., 24 Ill App2d 204, 164 NE2d

209.) Since we find that Plaintiff's appeal as to Defendant Phillips Petroleum Company must fail for his failure to request a new trial in the lower court, it is unnecessary to consider Plaintiff's other points as regards this Defendant.

██ With respect to Plaintiff's appeal from the order allowing judgment notwithstanding the verdict or, in the alternative, a new trial, as moved by Defendant, Brown Oil Co., other principles must control. The rules governing what a court may consider on a motion for judgment notwithstanding the verdict have been often stated and are well settled. ". . . the sole question presented to the court is whether, admitting the evidence in favor of the Plaintiff to be true, that evidence, together with all legitimate conclusions and inferences fairly tends to sustain Plaintiff's cause of action. We have no right to pass upon the credibility of the witnesses, to consider any purported impeachments, the weight thereof, or the weight of the testimony, since the motions admit the evidence in favor of Plaintiff to be true, together with all legitimate conclusions and inferences. Viceeli v. Cummings, et al., 322 Ill App 559, 54 NE2d 717." Elbers v. Standard Oil Co., 331 Ill App 207, 72 NE2d 874. (For the same conclusion see also Stegmann v. Zachariah, 46 Ill App2d 7, 196 NE2d 703; Sollars v. Blayney, 31 Ill App2d 341, 176 NE2d 477, and Freisland v. City of Litchfield, 24 Ill App2d 390, 164 NE2d 606.)

In the instant case there was evidence tending to show that the care and control of the pole were with Defendant, Brown Oil Company, that the pole had deteriorated to the point of being unsafe, and that as a result of this defect Plaintiff was injured. There was also evidence showing what Brown Oil Company had done to determine the condition of this pole, what Plaintiff had done to determine the safety of his operation and that the de-

fect as later disclosed, was latent at the time of the accident.

The court below based its opinion and Defendant heavily relies on National Builders Bank of Chicago v. Schuham, 319 Ill App 546, 49 NE2d 825. In the Schuham case, Plaintiff, while scraping window frames and sashes preparatory to painting, supported part of his weight on the top sash. This sash broke causing Plaintiff to lose his balance and fall, resulting in his injuries. It appeared after the accident that the wood in the sash in question had rotted. The court in reaching its conclusion, held specifically that it would not consider the possible contributory negligence of Plaintiff but preferred to base its decision on Plaintiff's total lack of proof of Defendant's negligence. In so holding the court stated "Under the facts of this case it must be held as a matter of law that the defendant was not guilty of negligence unless it was his duty in the (exercise) of reasonable care to take or saw apart the lower bar of the sash in question to discover whether it has rotted on the inside before he permitted decedent to paint or prepare to paint said sash. Defendant was under no such duty. To hold the owner liable under the circumstances shown here would place upon him an unreasonable burden which the law does not do."

 It is obvious from the quotation in the Schuham case as well as Weintraub v. John B. Sexton, 327 Ill Appp 348, 64 NE2d 235, that no duty exists on the part of the owner of property toward an invitee with respect to uses for which the property was not intended or designed or for a use not reasonably anticipated. Thus where no duty exists no question of care arises. Where the manner of use by the invitee is one which the owner should reasonably expect or anticipate, in connection with the invitation, however, the owner has a duty of ordinary care to see that the premises are in

a reasonably safe condition for such use. This principle is illustrated in Houlihan v. Sulzberger, 282 Ill 76, 118 NE 429, where the court held that the ladder used was intended to support the weight of a person and that consequently the care which the owner exercised in carrying out its duty was appropriately a question of fact for the jury. In the instant case we believe that the owner of the pole either knew, should have known or should have anticipated that in the repair or maintenance of the upper portion of the pole such pole might be required to support the weight of a person standing on a ladder leaning against the pole. Hendricks v. Socony Mobile Oil Co., 45 Ill App2d 44, 195 NE2d 1. There was, therefore, a duty upon the part of Defendant, Brown Oil Co., to inspect the pole in order to ascertain whether it was safe for this anticipated use. Whether Defendant reasonably performed that duty was a question of fact for the jury. There is evidence in the record such as the Defendant's knowledge of the age of the pole, its composition, its prior condition as well as Defendant's inspection or lack thereof, from which it could reasonably be inferred that Defendant was negligent. These questions should have been and were determined by the jury in the verdict which it returned. The trial court was in error in granting Defendant's motion for judgment notwithstanding the verdict.

This leaves us with the alternative in the order of the trial court granting Defendant a new trial. Under section 68.1(6) of the Civil Practice Act (c 110, § 68.1 (6), Ill Rev Stats 1965) we are required, where the unconditional rulings of the trial court, on a post-trial motion, have been held erroneous, to review the propriety of the conditional ruling. The reasons assigned by the trial judge here, for granting a new trial in the event the judgment n. o. v. should be reversed, were merely that the verdict was contrary to the manifest weight of the evidence, and to the law. As discussed

previously, however, the trial court was in error in applying the law regarding latent defects to this case. No other reasons being given in support of this conditional ruling, and none being argued by the parties, we conclude that the alternative order for a new trial is also erroneous.

Accordingly the order of the Circuit Court of LaSalle County granting Defendant judgment notwithstanding the verdict or in the alternative for a new trial is hereby reversed and the cause remanded to said court with directions to enter judgment on the verdict.

Reversed and remanded with directions.

CORYN, P. J. and ALLOY, J., concur.