GLORIA JEAN HOSEIN, Adm'r of the Estate of Kadir Hosein, Deceased, Plaintiff-Appellee, v. CHECKER TAXI COMPANY, INC., Defendant-Appellant.

First District (2nd Division)    No. 80-1833

Opinion filed March 31, 1981.

Jesmer & Harris, of Chicago (Charles E. Tannen and Allen L. Wiederer, of counsel), for appellant.

Keck, Mahin & Cate, of Chicago, for appellee.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, administrator of the estate of Kadir Hosein, brought a wrongful death action (Ill. Rev. Stat. 1979, ch. 70, par. 1 *et seq.*) sounding in negligence against Checker Taxi Company (hereinafter Checker), alleging that Hosein had leased a taxicab from Checker and was killed during the operation of that cab on April 21, 1978, when one or two passengers shot him. The complaint alleged that Checker owed a duty of due care, arising either from common law principles or from section 12—605 of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 12—605), to provide a shield or other protective partition between the driver's seat and the back seat, and that the failure to install such a shield was the proximate cause of Hosein's death. Checker's motion to dismiss the complaint for failure to state a cause of action was denied and we allowed Checker's interlocutory appeal therefrom under Supreme Court Rule 308 (Ill. Rev. Stat. 1979, ch. 110A, par. 308). For the reasons set forth below, we reverse the trial court's denial of the motion to dismiss.

We first address the applicability of section 12—605 to this action. Plaintiff asserted below that the complaint stated a cause of action for negligence based on Checker's alleged violation of section 12—605 because this penal statute, while not specifically providing for a civil remedy, was intended to protect the class, of which Hosein was a member, from the type of injury which Hosein received, and the injury had a direct and proximate connection with the violation. (*First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 373 N.E.2d 1326; *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93; *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881.) Checker responds that section 12—605, having been declared unconstitutionally vague in *Meyerson v. Carter* (1974), 22 Ill. App. 3d 73, 316 N.E.2d 240, cannot be employed here to establish a statutorily defined duty and standard of conduct. The following summary of the legislative amendments and judicial interpretations of section 12—605 is a necessary prelude to an analysis of the issues and arguments raised herein.

Section 12—605 was derived from sections 441 and 442 enacted by Public Act 76-1054 (1969 Ill. Laws 2129-30), effective August 28, 1969 which took the following form:

"In municipalities with 1,000,000 or more population, any taxicab manufactured, owned or operated after September 1, 1970, and regularly operated in such a municipality must have a bullet proof shield completely separating the driver's seat from the back seat." (Ill. Rev. Stat. 1969, ch. 95½, par. 441.)

"Any person owning a taxicab which is in violation of this Act

shall be fined not to exceed $500." (Ill. Rev. Stat. 1969, ch. 95½, par. 442.)

Effective January 1, 1972, sections 441 and 442 were repealed by Public Act 77-37 (1971 Ill. Laws 47) and section 12—605 of the Illinois Vehicle Code was enacted in their place. Public Act 77-2720 (1972 Ill. Laws 1866) substituted the words "guilty of a petty offense" for the words "fined not to exceed $500." (Ill. Rev. Stat. 1973, ch. 95½, par. 12—605.) This amendment to the penalty provision was necessary to conform section 12—605 to the Unified Code of Corrections. (Ill. Rev. Stat. 1973, ch. 38, par. 1001—1—1 *et seq.*) See the foregoing legislative history set forth in Smith-Hurd Annotated Statutes (Ill. Ann. Stat., ch. 95½, par. 12—605, at 29 (Smith-Hurd Supp. 1979)).

In August of 1974, this court held in *Meyerson* that section 12—605 was unconstitutionally vague because the term "bulletproof shield" was too indefinite and therefore capable of inconsistent interpretations. The term had not been defined in the statute and the expert testimony elicited at trial indicated that no special or technical definition of the term existed for application in this context. Thus neither the statute nor a commonly understood meaning of the term prescribed a norm of conduct as a guide to those who would be imposed with the duty to follow it.

After *Meyerson* was decided, in September of 1977 the Illinois Legislature enacted Public Act 80-911 (1977 Ill. Laws 2641, 2649) which, effective October 1, 1977, deleted from section 12—605 the language "any person owning a taxicab which is in violation of this section shall be guilty of a petty offense" (Ill. Rev. Stat. 1977, ch. 95½, par. 12—605), and, at the same time, amended section 16—104 so that it provided that "Every person convicted of a violation of any provision of this Act for which another penalty is not provided shall for a first or second conviction thereof be guilty of a petty offense; and for a third or subsequent conviction within one year after the first conviction, such person shall be guilty of a Class C misdemeanor." (Ill. Rev. Stat. 1977, ch. 95½, par. 16—104.) Section 16—101 makes section 16—104 applicable to section 12—605. (Ill. Rev. Stat. 1977, ch. 95½, par. 16—101.) A transcript of the House and Senate debates on Public Act 80-911, included in the record on appeal by Checker, indicates that the sole purpose behind the 1977 amendment to section 12—605 was to change the penalty previously set forth therein by deleting it and deferring to the graduated penalty scheme of section 16—104. A reading of Public Act 80-911 indicates that the penalty provisions of numerous other sections of the vehicle code were also eliminated in deference to the scheme of section 16—104. Noticeably absent from the debates' transcript is any mention of the *Meyerson* decision rendered three years previously.

■■■ In response to Checker's assertion that *Meyerson* precludes use of

section 12—605 in the instant case, plaintiff claims, first, that even if a penal statute has been declared invalid so that its criminal sanction is inoperative, the statute may still be employed to establish duty and standard of conduct in a negligence case, citing *Clinkscales v. Carver* (1943), 22 Cal. 2d 72, 136 P.2d 777, *West Texas Coaches, Inc. v. Madi* (Tex. App. 1930), 26 S.W.2d 199, and *Ponca City v. Reed* (1925), 115 Okla. 1166, 242 P. 164. These cases did hold that the statute or ordinance was properly used in establishing the relevant standard of conduct in a negligence case despite an infirmity which prevented enforcement of the statute for its intended purpose; however, none of these cases involved the situation present in the principal case where the infirmity preventing enforcement of the statute also necessarily precludes its use in a negligence case. Unlike the cases cited, *Meyerson* found section 12—605 to be unconstitutionally vague as to the meaning of bulletproof shield and that the penal provision specifically included therein could not be enforced. Yet, plaintiff seeks to employ this same indeterminate term to impose a duty of compliance on Checker in a civil case. This position is untenable. Where a statute is so vague and indeterminate that persons of common intelligence must necessarily guess at its meaning and differ as to this application, neither civil nor criminal liability can arise therefrom. (*Vallat v. Radium Dial Co.* (1935), 360 Ill. 407, 412-13, 196 N.E. 485; *Parks v. Libby-Owens-Ford Glass Co.* (1935), 360 Ill. 130, 140, 195 N.E. 616; *In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310, 314, 398 N.E.2d 17.) Therefore, *Meyerson*, having determined that the statute was too vague to permit enforcement of its penal provision, also effectively terminated the use of this section as a legislatively prescribed duty and standard of care in a negligence case in the manner otherwise allowed by *First National Bank, Davis*, and *Dini*.

Plaintiff next asserts that the Legislature's intent in amending section 12—605 in 1977 was to eliminate all penal liability and instead impose only civil liability, and, that in any event, the amendment should result in a hearing below, as was conducted in *Meyerson*, to determine whether the term has acquired a generally understood and technical definition since *Meyerson*, which would cure the defect found to exist in that case. We find neither argument persuasive. First, in enacting the October 31, 1977, amendment to section 12—605, the Legislature simply altered the previously existing criminal sanction of that section by deferring to the graduated penalty scheme of section 16—104. There is no indication from this change of any legislative intent to transform section 12—605 from a criminal liability section to a civil liability section. As to the need for a new hearing on the meaning of "bulletproof," we note that the Legislature made no effort to alter the language which was the source of the infirmity. It cannot be held, therefore, that the intention of the Legislature was to

cure the constitutional defect by enacting the amendment. Under these circumstances, the amendment does not operate as a new enactment, but is deemed to be a continuation of the unchanged portion (Ill. Rev. Stat. 1979, ch. 1, par. 1101), and is not ripe for another constitutional test. *Salzman v. Boeing* (1940), 304 Ill. App. 405, 410, 26 N.E.2d 696.

■■ The second issue presented for review is whether Checker was under a common law duty to protect decedent taxicab-lessee from the criminal acts of third parties while using the taxicab. The existence of a duty is a question of law to be determined by the court. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 555, 328 N.E.2d 538.) Whether the law imposes a duty does not depend on foreseeability alone but is also a function of the likelihood of the injury, the magnitude of the burden of guarding against it and the desirability of imposing that duty on the defendant. (*Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 99, 306 N.E.2d 39; *Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231.) At common law, in the absence of a special relationship between the defendant and the injured person, there is no duty imposed upon a defendant to protect an injured party against the criminal acts of third parties. (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 208, 399 N.E.2d 596; *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 317, 412 N.E.2d 472; Prosser, Torts §33, at 173-74 (4th. ed. 1971); Restatement (Second) of Torts §302B, Comment *e*, and §314, Comment *c* (1965).) The courts in Illinois have adopted those special relationships enumerated in section 314A of the Restatement (Second) of Torts which include common carrier-passenger, innkeeper-guest, business invitor-invitee, and custodian-ward. (*Whalen v. Lang* (1979), 71 Ill. App. 3d 83, 85, 389 N.E.2d 10.) The complaint in the instant case, having failed to set forth any of these special relationships, should have been dismissed. Plaintiff's reliance on *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497, is misplaced because there a special relationship had been established. *Smith v. Chicago Housing Authority* (1976), 36 Ill. App. 3d 967, 969, 344 N.E.2d 536.

For these reasons, Checker's motion to dismiss should have been granted. We are therefore compelled to reverse.

Reversed.

STAMOS and DOWNING, JJ., concur.