Dale E. WALKER; Sharon D. Patchett; Melba Jean Thomas as administrator of the estate of William N. Thomas, deceased; Danny Dill; Natalie Dill; Sandra N. Cole as administrator of the estate of Stanley E. Cole, deceased; Robert Conkle as administrator of the estate of Robert J. Conkle, deceased, Plaintiffs,

v.

Charles ROWE, former director of the Department of Corrections; Thaddeus Pinckney, former warden, Pontiac Correctional Center; David Sandall and William O'Sullivan, former assistant wardens, Pontiac Correctional Center, William Shehorn; Louis Lowery, Defendants.

No. 80 C 5310.

United States District Court, N. D. Illinois, E. D.

Jan. 27, 1982.

Jeffry J. Knuckles, Fawell, James & Brooks, Naperville, Ill., for plaintiffs.

Tyrone C. Fahner, Atty. Gen., Mary A. Mulhern, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs are three former correctional officers, one of their wives and three administrators of the estates of correctional officers who died in an inmate riot at the Pontiac Correctional Center on July 22, 1978. Plaintiffs' cause of action is brought pursuant to 42 U.S.C. § 1983 on the theory that various state corrections officials deprived them of their constitutional rights by failing to take action to prevent the July 22, 1978, riot and its tragic consequences. Defendant William O'Sullivan, former assistant warden at the correctional center and defendants William Shehorn and Louis Lowery, former correctional officers at Pontiac, have moved to dismiss this claim for lack of subject matter jurisdiction and failure to state a claim upon which relief

may be granted.[1] Fed.R.Civ.P. 12(b)(1) and (6).

Plaintiffs' complaint seeks redress for defendants' alleged failure to take steps to control, if not prevent, the violence which occurred at the Pontiac Correctional Center on July 22, 1978. Although the complaint contains 29 separate allegations, the thrust of plaintiffs' claim involves defendants' failure to warn plaintiffs of an impending prison disturbance, to operate, equip and maintain the Pontiac facility in a safe manner in the months preceding the riot, to provide adequate training and supervision of prison personnel, and to promulgate and enforce sufficient safety rules in the prison as required by state law. Taken as true for purposes of this motion, *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), these facts do state a claim for which relief can be granted as to defendant O'Sullivan. For the reasons stated below, however, this Court holds that plaintiffs' complaint does not state a claim for which relief can be granted as to defendants Shehorn or Lowery.

 Defendants argue as a threshold matter that the Court lacks subject matter jurisdiction over this case because the Illinois Workmen's Compensation Act, Ill.Rev. Stat. 1979 ch. 48, § 138.1 *et seq.*, is the exclusive remedy for all employee claims arising out of deaths or injuries incurred in the course of employment. The state statute upon which defendants rely, however, does not and could not preclude the vindication of plaintiffs' constitutional rights in a federal forum.[2] *See Hutchings v. Erie City and County Library Board of Directors*, 516 F.Supp. 1265, 1272–73 (W.D.Pa.1981). State law cannot immunize the conduct of those persons who, acting under color of law, allegedly deprive others of their constitutional rights. *Cf. Martinez v. California*, 444 U.S. 277, 284 n.8, 100 S.Ct. 553, 558 n.8, 62 L.Ed.2d 481 (1980); *McLaughlin v. Tilendis*, 398 F.2d 287, 290 (7th Cir. 1968). In light of the wide disparity between the breadth of plaintiffs' damage claims herein and the limited damages award provided in the Illinois Workmen's Compensation Act, Ill.Rev.Stat. 1979 ch. 48, § 138.8(b)(2) and (4.2), the effect of dismissal on this ground would leave plaintiffs without an adequate remedy for the alleged deprivation of their constitutional rights.

The essence of this action is that defendants' failure to control the situation at Pontiac deprived plaintiffs of life and liberty without due process of law as guaranteed by the fourteenth amendment. The question of whether such an allegation of wrongful inaction rises to the constitutional dimension necessary to ground a § 1983 cause of action was addressed by the Su-

---

1. Defendants also argue that Judge Grady's decision in Local 494, *AFSCME v. Thompson*, 79 C 5196, bars this action under the doctrines of res judicata and collateral estoppel. Although 79 C 5196 was also a civil rights action arising from the July 22 riot at Pontiac, defendants have not established that plaintiffs in this action were parties to or in privity with any of the parties in the prior litigation, *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7, 99 S.Ct. 645, 649 n.7, 58 L.Ed.2d 552 (1979). Moreover, defendants have not established that the broad range of issues raised by the parties in this case are identical to the issues litigated in 79 C 5196. *Parklane Hosiery, supra* at 326 n.6, 99 S.Ct. at 249 n.6. Accordingly, this Court will not dismiss plaintiffs' complaint on res judicata or collateral estoppel grounds.

2. In relevant part, the Illinois Workmen's Compensation Act provides:

No *common law* or *statutory* right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury.

Ill.Rev.Stat. 1979 ch. 48, § 138.5(a) (emphasis added). Plaintiffs' suit, although brought pursuant to 42 U.S.C. § 1983, asserts a constitutional rather than common law or statutory right.

preme Court in *Martinez*.[3] As made clear in *Martinez*, not every injury resulting directly or indirectly from the conduct of state officials is actionable under § 1983. 444 U.S. at 281, 100 S.Ct. at 557. *See also Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981); *Withers v. Levine*, 615 F.2d 158, 162 (4th Cir. 1980). The alleged commission of a state law tort, for example, will gain federal cognizance under § 1983 only when the conduct complained of is particularly egregious. *Williams, supra. See Van Horn v. Lukhard*, 392 F.Supp. 384, 387 (E.D.Va.1975).

■ However, even if defendants' conduct herein constituted nothing more than mere negligence, this conclusion alone does not mandate the dismissal of this § 1983 action as a matter of law. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). Moreover, the causal relationship between defendants' failure to act and plaintiffs' damages, although indirect, is not so remote as to require this Court as a matter of law to grant defendants' motions to dismiss.[4] *Cf. Spence v. Staras*, 507 F.2d 554, 557 (7th Cir. 1974). The consequence of state officials' failure to act when they had an affirmative duty to do so under state law is sufficient to support a valid § 1983 claim. *Arnold v. IBM*, 637 F.2d 1350, 1355–56 (9th Cir. 1981); *Clappier v. Flynn*, 605 F.2d 519, 533 (10th Cir. 1979); *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978); *Sims v. Adams*, 537 F.2d 829, 831–32 (5th Cir. 1976).

■ The critical question of law relevant to these motions to dismiss, therefore, is whether any of the moving defendants had a constitutionally cognizable duty to plaintiffs to take affirmative steps to prevent or control the disturbance at the Pontiac Correctional Center on July 22, 1978.[5] The existence of any affirmative duties owed these plaintiffs can be identified by examining the nature of the relationship between the parties involved. Although the exact nature of the relationship between plaintiffs and defendant O'Sullivan is not made clear in any of the papers filed before the Court, we are not prepared to

---

**3.** Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**4.** In *Martinez v. California, supra*, the Supreme Court upheld the trial court's demurrer to the complaint in a § 1983 action on the ground that the murder of a 15 year old girl was "too remote a consequence" of the defendant's decision to release the murderer on parole five months earlier. *Id.* at 285, 100 S.Ct. at 559. The circumstances of the present case are substantially different. Particularly in light of the anticipated nature of the disturbance alleged in plaintiffs' complaint, this Court is not prepared to rule, as a matter of law, that the defendants' failure to act in this case is too remote a cause of plaintiffs' damages to support a § 1983 claim for which relief can be granted.

**5.** Defendants cite Judge Grady's opinion in Local 494, AFSCME, *supra*, in support of the proposition that the state did not owe plaintiffs any cognizable duty to prevent or control the Pontiac riot. In his opinion, Judge Grady concluded that because the "state has not required [correctional officers] to give up their liberty and remain in the institution, [the state] does not owe them the same protections it owes to prisoners." *Id.* This conclusion, however, does not purport to establish that the state, under all circumstances, owes no cognizable duty to its correctional officers in state prisons. At a minimum, the state as employer must provide its correctional officers with reasonably safe working conditions. *Cf. American Federation of State, County and Municipal Employees v. Walker*, 27 Ill.App.3d 883, 888–90, 327 N.E.2d 568 (4th Dist. 1975). *See generally Coselman v. Schleifer*, 97 Ill.App.2d 123, 126–27, 239 N.E.2d 687 (2d Dist. 1968); *Mack v. Davis*, 76 Ill.App.2d 88, 97, 221 N.E.2d 121 (2d Dist. 1966); *Hendricks v. Socony-Mobil Oil Co., Inc.*, 45 Ill.App.2d 44, 56–57, 195 N.E.2d 1 (2d Dist. 1963). Defendants' attempt to distinguish the duties imposed on the state in *AFSCME v. Walker* on the theory that the court was concerned solely with the safety of the residents of the school is unpersuasive. Indeed, in dissent, Judge Simkins observed that the "premise" of the court's ruling was that "the residents *and employees* of the institution have a right to be protected from physical harm." *Id.* at 890, 327 N.E.2d 568 (emphasis added).

hold on this record that the assistant warden of the Pontiac facility does not, as a matter of law, owe any affirmative duty to the correctional officers serving that prison. Indeed, at common law, the "special relationship" between an employee and his superiors imposes upon those superiors the duty to protect employees from the reasonably foreseeable attacks of third persons.[6] *See generally Hosein v. Checker Taxi Co.,* 95 Ill.App.3d 150, 154, 50 Ill.Dec. 460, 419 N.E.2d 568 (1st Dist. 1981); *Willie Cross v. Chicago Housing Authority,* 74 Ill.App.3d 921, 925, 30 Ill.Dec. 544, 393 N.E.2d 580 (1st Dist. 1979); *Whalen v. Lang,* 71 Ill.App.3d 83, 85, 27 Ill.Dec. 324, 389 N.E.2d 10 (3d Dist. 1979); Restatement (Second) of Torts, § 302B Comment e(B), 314A Comment A (1965). Whether defendant O'Sullivan satisfied such an obligation or whether his alleged inaction was so egregious under the circumstances that this claim rises to the level of a constitutional deprivation are factual questions which are more appropriately resolved on a motion for summary judgment or at trial.

The relationship between plaintiffs and defendants Shehorn and Lowery, fellow correctional officers at Pontiac, on the other hand, is not sufficient as a matter of law to support a § 1983 claim. Plaintiffs have not identified and this Court will not imply any affirmative duty on these defendants in the absence of the kind of special relationship between the parties required by state tort law. *See Fancil v. Q. S. E. Foods, Inc.,* 60 Ill.2d 552, 559–60, 328 N.E.2d 538 (1975); Rstmt. (Second) of Torts, § 314A (1965). A relationship between parties which does not support a tort claim under state law cannot support a § 1983 claim for which relief can be granted. As a practical matter, imposing on those defendants a legal duty to warn all other correctional officers every time a rumor of disturbance arises in the prison would almost certainly result in more confusion than caution.

**6.** The Court is not unmindful of the broad discretion generally afforded prison officials in the administration of prison affairs. *U. S. ex rel. Miller v. Twomey,* 479 F.2d 701, 721 (7th Cir. 1976), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900,

For the foregoing reasons, the motions by defendants Shehorn and Lowery are granted and the motion by defendant O'Sullivan to be dismissed from this action is denied. It is so ordered.

39 L.Ed.2d 102 (1977). By denying defendant O'Sullivan's motion to dismiss, we do not mean to imply that defendants were obligated to take all the affirmative steps outlined in plaintiffs' complaint.