William J. SHEETS, Harold D. Delph, Billy A. Huston Jr., Charles Widener, Jack Melling, Michael W. Richardson, Plaintiffs,

v.

INDIANA DEPARTMENT OF CORRECTIONS, Board Members of the Department of Corrections, in their Individual and Official Capacity, Norman G. Owens, Superintendent of the Indiana State Reformatory, Pendleton, Indiana, Robert Shriner, Assistant Superintendent of the Indiana State Reformatory, Craig Hanks, Assistant Superintendent of the Indiana State Reformatory, Dan Juroff, Unit Team Manager of the Indiana State Reformatory, Lt. William Wicker, Correctional Officer of the Indiana State Reformatory, Defendants.

No. IP 85–1080–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 31, 1986.

William E. Wendling, Jr., Indianapolis, Ind., for plaintiffs.

Linley E. Pearson, Atty. Gen. of Indiana, and David A. Arthur, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## ENTRY

BARKER, District Judge.

This cause is presently before the Court on defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure.

The plaintiffs in this case are correctional officers at the Indiana State Reformatory ("Reformatory"), located in Pendleton, Madison County, Indiana. The defendants are the Indiana Department of Corrections, the Board Members of the Department of Corrections, and four other individuals who act in a supervisory capacity at the Reformatory.

In addition, plaintiffs' complaint states that "[r]elief is sought against each and all defendants as well as their agents, assistants, successors, employees and persons acting in concert or cooperation with them, or at their direction or under their supervision." As such persons have neither been named as parties to this lawsuit, nor even reasonably described, this provision of the complaint will be disregarded for the purpose of ruling on defendants' motions to dismiss.

On approximately February 1, 1985, a riot and hostage taking situation occurred at the Reformatory. Plaintiffs allege that "[a]fter attacking the guards, the prisoners took control of the outer guards hall, which controlls [sic] all the housing units and took control of 'J' cell whereby three hostages were held while negotiating with the state authorities." Between the time of the beginning of the seige and its eventual termination approximately fifteen hours later, the plaintiffs allege that they were brutally attacked without provocation by the inmates. Plaintiffs claim that the cause of this riot was a severe beating perpetrated on an inmate, Lincoln Love, by correctional

officers other than the plaintiffs a few hours earlier. Plaintiffs state that over twenty inmates in the area witnessed or became aware of this attack on Mr. Love, and became enraged at the excessive force used by the correctional officers. Plaintiffs state that approximately ten (10) inmates then armed themselves with homemade knives and shanks and attacked the plaintiffs in retaliation for the beating received by Mr. Love.

The plaintiffs allege that inmate beatings and use of excessive force are "common occurence[s] [sic] and accepted policy and practice at the Indiana Reformatory," and attempt to attach liability to the defendants under theories of negligence and strict liability. Plaintiffs claim that:

The defendants knew that these incidents were occurring on a frequent basis and, despite such knowledge, refused to take corrective measures to prohibit such policy and practice.

The defendants knew, [or] but for reckless disregard of the facts should have known, that as a foreseeable result of allowing such policy and practice, defendants were exposing plaintiffs and other Correctional Officers to imminent and unreasonable danger of inmate retaliation.

The defendants knew, but for reckless disregard of the facts should have known, that the safety of the Correctional Officers at The Indiana Reformatory was in peril because the inmate population had been, for a long period of time, arming themselves with illicit weapons.

The defendants repeatedly were asked by certain Correctional Officers and employee representatives to initiate policies and procedures to curb the ability of the inmates to manufacture and obtain illicit weapons.

The defendants repeatedly were advised by certain Correctional Officers and employee representatives that various safety and security procedures at The Indiana Reformatory were being ignored, but that if such procedures were followed, the unreasonable danger to the Correctional Officers would be materially reduced. Defendants permitted, authorized, ratified, or knowingly acquiesced in the failure to adhere to such procedures.

Requests for meaningful self-defense training were rejected. Requests for protective weapons and effective access to defensive weapons were rejected.

The defendants were informed that particular inmates would, if given the opportunity, inflict great harm and physical injury to a certain plaintiff, William Sheets.

In spite of the knowledge alleged in [the second] paragraph ... the defendants took no action to avert such injury from occurring.

The acts, conduct, behavior and commissions of the defendants, and each of them, were performed knowingly, intentionally and maliciously, thereby subjecting the plaintiffs to deprivation of their substanative [sic] rights in violation of the Fourteenth Amendment to the Constitution of the United States and causing the plaintiffs to suffer substantial damages.

In addition, the plaintiffs claim that the beating of Mr. Love, which allegedly triggered the events leading to the plaintiff's injuries, "was at the express direction of defendant Lt. Wicker, the guard supervisor and agent of the other named defendants who was on the scene."

The plaintiffs request that the Court grant compensatory and punitive damages from each of the individual defendants. Plaintiffs additionally seek a permanent injunction from the Court, barring the defendants from further violations of the plaintiffs' constitutional rights and requiring the defendants to rectify "the unconstitutional conditions herein." Plaintiffs also seek costs, including reasonable attorney fees, and any other just and proper relief.

## I. *Immunity from Suit*

As a preliminary matter, this Court must recognize that it lacks jurisdiction to adjudicate the claims made against the Indiana Department of Corrections, and against the other defendants in their official capacity by virtue of the Eleventh Amendment to

the United States Constitution. The United States Supreme Court has held that the Eleventh Amendment bars suits prosecuted against a state by a citizen of that state. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Further, in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court held that an unconsenting state is immune from suits brought in federal court by its own citizens, whether the State is named a party to the action or is merely the real party in interest because its individual officials are nominal defendants. This reasoning also applies when the State, one of its agencies or departments is named as a defendant; such a suit is barred, regardless of the relief sought. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

■ There are exceptions to this outright bar. For example, Congress may legislate to enforce constitutional provisions, thereby abrogating the State's Eleventh Amendment immunity. To override this immunity, congressional intent must be either explicit in the statute, or plainly evidenced from the legislative history, *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Without such a showing of explicit intent, the Supreme Court has refused to infer that Congress "desired silently to deprive the States" of immunity. *Employees of Dept. of Public Health and Welfare, Missouri v. Dept. of Public Health and Welfare, Missouri,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

■ The State may waive its immunity, but as the Supreme Court held in *Edelman,* such a waiver must exist in the most express language, or by such overwhelming implications from the text as would leave no room for any other reasonable construction. *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1360 (citing *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 29 S.Ct. 458, 53 L.Ed. 742 (1909)).

■ The State of Indiana, by statute, has chosen not to waive its immunity under the Eleventh Amendment. Ind.Code § 34-4-16.7-3 (1982). Thus, Indiana's immunity from suit extends to actions brought under

Section 1983. *Quern,* 440 U.S. at 337, 99 S.Ct. at 1143. *See also Hendrix v. Indiana State Public Defender System,* 581 F.Supp. 31 (N.D.Ind.1984).

■ As the Indiana Department of Corrections is an agency of the state of Indiana, it receives the same Eleventh Amendment protection as the state itself. *See Stanley v. Indiana Civil Rights Com'n,* 557 F.Supp. 330 (N.D.Ind.1983) *aff'd* 740 F.2d 972 (7th Cir.1984). Thus, defendants' Section 12(b)(1) motion to dismiss must be granted as regarding defendant Indiana Department of Corrections.

■ The Board Members of the Department of Corrections, as well as the other individual defendants, are being sued both in their individual and official capacities. To the extent that the complaint for monetary damages is aimed at the individual defendants acting in their official capacity, such claims are also barred by the Eleventh Amendment. *Stanley,* 557 F.Supp. at 334 (citing *Owen v. Lash,* 682 F.2d 648, 654-55 (7th Cir.1982)). Thus, the only remaining claims are against the Board Members of the Department of Corrections and the other defendants in their individual capacity. Prison officials have been held to hold qualified immunity for their actions. *Chavis v. Rowe,* 643 F.2d 1281 (7th Cir.1981).

■ Qualified immunity generally extends only to actions performed in "good faith," a standard which has recently developed into an objective test. *See Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). If the defendants have clearly violated the rights of others, even if not those of the plaintiffs, there can be no qualified immunity, as the defendants cannot be said to have been acting in "good faith." *Buise v. Hudkins,* 584 F.2d 223 (7th Cir.1978); *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979); *see also Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The plaintiffs allege that the defendants endorsed and approved a policy of prisoner beatings, and, in particular, inmate Love. Such a

beating would be a clear violation of an inmate's rights, so qualified immunity is not available for the remaining defendants in their personal capacity. Also, the existence of immunity does not affect the plaintiffs' request for injunctive relief. *Drollinger v. Milligan*, 552 F.2d 1220 (7th Cir. 1977). Such injunctive relief, however, may only be granted if a constitutional right is found to have been violated.

## II. *Claims Based on Negligence*

 The plaintiffs allege a violation of their constitutional rights, particularly under the Fourteenth Amendment, and are pursuing their claim by utilizing 42 U.S.C. § 1983, which serves as a remedial statute for the protection of constitutional rights. Defendant Wicker is alleged to have expressly authorized and directed the beating of inmate Love. Wicker and the other defendants are said to have known of an accepted policy and practice of excessive beatings at the Reformatory, and are alleged to have "either expressly or impliedly, permitted, authorized, ratified or knowingly acquiesced in such policy and practice."

Plaintiffs state that the plaintiffs' injuries were a foreseeable result of the defendants' approval of this policy. Thus, the plaintiffs are claiming that the defendants committed the intentional tort of assault and battery. The plaintiffs' complaint also contains a negligence claim, although the plaintiffs have subsequently denied this fact in their briefs. Both of these claims are, in essence, common law tort claims which have been modified in an attempt to produce § 1983 coverage.

The negligence claim has been effectively precluded by the Seventh Circuit in *Walker v. Rowe*, 791 F.2d 507 (7th Cir. 1986). In *Walker*, three prison guards and the estates of three deceased prison guards filed suit against the director of the Illinois Department of Corrections and the assistant warden of operations at the Pontiac Correctional Center seeking damages for injuries received from an inmate riot.

The plaintiffs alleged that the Pontiac Correctional Center was unsafe in a number of respects for guards. Some of these alleged defects were found by the Court to have been the responsibility of persons other than the named defendants. But some of the alleged defects, the Court stated, might have been found by a jury to have been connected to decisions made by defendants. These included:

Although Pontiac had metal detectors, they were not operational

Although prisoners were known to make weapons in the metal shop, prison officials did not conduct enough random shakedowns of the inmates' cells to find the weapons, and the request of the guards' union for more shakedowns was "not immediately accepted"

Although [Assistant Warden] Sandahl should have known that the prison was tense, he allowed it to operate on a normal routine instead of "locking down" the prison (that is, locking inmates in their cells)

When Sandahl (who was at home) learned that a riot was in progress, he did not immediately issue shotguns to the tactical squad and order it to quell the disturbance; instead Sandahl put Major Lowery in charge, and Major Lowery did not issue shotguns until Sandahl arrived and ordered their issuance more than an hour later

*Id.* at 509.

The court saw the issue of the case to be "whether acts and omissions of this character, which arguably increased the danger to which the guards were exposed, violate the constitution." *Id.* The Seventh Circuit concluded that such acts or omissions did not, reversing the District Court. The court came to this conclusion after assuming not only that the defendants refused to act after full knowledge of the risks involved, but also after assuming that the decision to accept such risks constituted gross negligence. The court then gave its rationale for such a conclusion:

The defendants did not kill or injure the guards; prisoners did, and this makes all the difference. See *Martinez v. California*, 444 U.S. 277, 285 [, 100 S.Ct. 553, 559, 62 L.Ed.2d 481] (1980).

To see why, consider the language of the due process clause of the fourteenth amendment, on which the guards rely: "[N]or shall any State *deprive* any person of life, liberty, or property, without due process of law ..." The constitution requires the state to grant "process" before it deprives people of life, liberty, or property. It is a constraint on the state's power to act, a prohibition on the misuse of official power. *Daniels v. Williams,* [474 U.S. 327,] 106 S.Ct. [662] at 665–66 [, 88 L.Ed.2d 662]. It does not require the state to guarantee life, liberty, or property against invasion by private actors; it requires only that the state not act, unless with due process, when life, liberty, or property are in the balance.

"Due process" does not mean "due care." *Davidson v. Cannon,* [474] U.S. [344], —— 106 S.Ct. 668, 670 (1986). We concluded in *Bowers v. DeVito,* 686 F.2d 616 (7th Cir.1982), that because the bill of rights is a charter of negative liberties, the state need not protect people from danger. *See* also *Hinman v. Lincoln Towing Service, Inc.,* 771 F.2d 189, 194 (7th Cir.1985). *Bowers* held that the state has no constitutional obligation to keep aggressive people out of free society. Subsequent cases have held, among other things, that the police have no constitutional duty to save people in danger. *Beard v. O'Neal,* 728 F.2d 894, 899 (7th Cir.) (person known to be threatened by criminal), *cert. denied,* [469 U.S. 825,] 105 S.Ct. 104 [, 83 L.Ed.2d 48] (1984); *Jackson v. City of Joliet,* 715 F.2d 1200 (7th Cir.1983) (person in burning car), *cert. denied,* 465 U.S.1049 [, 104 S.Ct. 1325, 79 L.Ed.2d 720] (1984). The bill of rights is designed to protect people from the state, not to ensure that the state supplies minimum levels of safety or comfort.

*Id.* at 509–10.

In *Walker v. Rowe,* 535 F.Supp. 55 (1982), the District Court for the Northern District of Illinois examined "the nature of the relationship between the parties involved," and found that "at common law, the special relationship between an employee and his superiors imposes upon those superiors the duty to protect employees from the reasonably foreseeable attacks of third persons." *Id.* at 59 (citations omitted).

The District Court then concluded that it could not "hold on this record that the assistant warden of the Pontiac facilities does not, as a matter of law, owe any affirmative duty to the correctional officers serving that prison." *Id.* Instead, the District Court held that the matter should be resolved later in the litigation process, stating that "[w]hether defendant O'Sullivan satisfied such an obligation or whether his alleged inaction was so egregious under the circumstances that this claim rises to the level of a constitutional deprivation are factual questions which are more appropriately resolved on a motion for summary judgment or at trial." *Id.*

The Seventh Circuit disagreed with the District Court and held that no "special relationship" arises out of the employment situation, largely relying on free market analysis. The Court of Appeals distinguished the cases by the District Court relied upon in finding a "special relationship," stating that

[t]hese cases are based on the principle that when the state takes someone into its care or cuts off sources of private aid, the state must afford replacement protection. So when the state imprisons a person and prevents his ambling down to the family physician, the state must provide some medical care. When the state arrests the adult having custody of a child, the state had better take care of the child. *White v. Rochford,* 592 F.2d 381 (7th Cir.1979). Sometimes we shorten this inquiry to a search for a "special relationship" between the state and the person to be protected. *Ellsworth v. City of Racine,* 774 F.2d 182, 185 (7th Cir.1985), *cert. denied,* [—— U.S. ——,] 106 S.Ct. 1265 [, 89 L.Ed.2d 574] (1986). Whatever the name, the rationale lies in constraints the state imposes on private action.

791 F.2d at 511.

The Court of Appeals saw no "imposition" in an employment contract. As in any con-

tract, each party is trying to obtain the terms most favorable to his or her position, and as long as the balance of power is not unconscionably tipped to one side, there will be no reason for a Court to invalidate the contract absent special facts (such as incapacity, etc.). As Circuit Judge Easterbrook wrote for the court:

> The safety of guards and other employees of the state is affected as much by the guards themselves as by the choices made by the state. Would-be guards must decide whether to take the job—with a given mix of salary, safety, and compensation for injury—or to seek work elsewhere. The state may not dragoon people to be guards. Would-be guards, represented by their labor unions, may decide to accept a little less safety in exchange for a little higher pay. Having decided that the combination of pay, benefits, and safety is satisfactory, the guards cannot turn around and say that the constitution required that safety be a larger component of the total package. The constitution no more assures a safe job than it does a job with a generous salary.

Id. at 510 (citations omitted).

At least in regard to plaintiffs' negligence claims, *Walker* is not distinguishable. The plaintiffs claim that as a result of the defendants failure to act, inmate Love was beaten, which triggered the violence leading to plaintiffs' injuries. Assuming *arguendo* that the retaliation of the inmates against the plaintiffs was "reasonably foreseeable" under common law tort analysis, there is simply no "special relationship" arising out of the employment contract which imposes a duty on the defendants to protect plaintiffs from injuries caused by third parties. Thus, defendants' motion to dismiss for failure to state a claim must be granted as to the negligence allegations.

### III. *Claims Based Upon Intentional Acts*

The plaintiffs also allege the defendants' acts or omissions were intentional, not merely negligent. The plaintiffs have heavily stressed this distinction since the

Seventh Circuit ruling in *Walker* was handed down. Although much of the *Walker* rationale is applicable to the employment relationship even when intentional actions leading to injuries of a constitutional level are alleged, this Court is reluctant to ignore plaintiffs' emphasis of this distinction.

Many courts have been understandably hesitant to allow what are essentially common law tort claims to be distorted into alleged constitutional violations and accompanying § 1983 claims. See *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). There is, however, a significant amount of legitimate overlap between a federal § 1983 claim and a common law tort allegation. The difficulty lies in establishing the boundaries of each cause of action. *See* M. Wells and T. Eaton, *Constitutional Torts*, 18 Georgia L.Rev. 201 (1984). As Judge Posner wrote in *Jackson v. City of Joliet*, 715 F.2d 1200, 1201 (7th Cir.1983), *cert. denied*, 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984), "[n]o problem so perplexes the federal courts today as determining the outer bounds of section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, the ubiquitous tort remedy for deprivations of rights secured by federal law (primarily the Fourteenth Amendment) by persons acting under color of state law." The issue in *Jackson* was "whether the negligent failure of local public-safety workers to save the occupants of a burning automobile is actionable under section 1983 as a deprivation of life without due process of law." *Id.* The Seventh Circuit found that it was not, and remanded the case to the District Court with directions to dismiss for failure to state a claim under federal law.

The Court of Appeals stated that:

The Civil Rights Act of 1871 did not make every tort committed under color of state law actionable in federal court. *Paul v. Davis*, 424 U.S. 693, 699–701, 96 S.Ct. 1155, 1159–1161, 47 L.Ed.2d 405 (1976); *Baker v. McCollan*, 443 U.S. 137, 146–47, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979); *Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980); *Parratt v. Tay-*

*lor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). These cases and others we might cite are distinguishable but they express a mood to which we are obligated to pay respectful attention—a mood of concern lest state tort law be completely swallowed up by section 1983. The danger is acute here. In any traffic accident case—in any accident case—one can argue that the police, the firemen, and other public-safety workers should have done more to assist the accident victim. If the district court's decision were affirmed, many traffic accidents, especially single-car accidents, would become the subject of federal litigation. Section 1983 is not a mandate of highway safety.

*Id.* at 1205–06.

The concern of the Court of Appeals is also relevant here. If the instant action were found to state a claim, any injury which could allegedly be traced to the action of a government official could rise to the level of a § 1983 claim. Just as "Section 1983 is not a mandate for traffic safety," it also "does not assure safe working conditions for public employees." *Walker,* 791 F.2d at 510. The question before this Court, however, is whether defendants intentional actions, the alleged inmate beatings, and the policy leading to the beatings may give rise to a Section 1983 claim. In particular, this Court must decide whether plaintiffs' claims allege a deprivation of "life, liberty or property, without due process of law" sufficient to defeat defendants' 12(b)(6) motion.

### A. Due Process

The sufficiency of plaintiffs' complaint is to be appraised under the standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957):

> [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Although the Federal Rules of Civil Procedure do not require a plaintiff "to set out in detail the facts upon which he bases his claim," *id.* at 47, 78 S.Ct. at 102, he must "set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery." *Daves v. Hawaiian Dredging Co.,* 114 F.Supp. 643, 645 (D.Haw.1953), *quoted in Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984). If the factual allegations narrated in the complaint are insufficient to outline a constitutional violation, attaching to these facts the bare legal conclusion will not save the complaint. *Id. See also Benson v. Cady,* 761 F.2d 335 (7th Cir.1985).

In *Benson,* the Seventh Circuit stated that

> [a] section 1983 action is a tort damage action even though the duty the defendant is alleged to have breached is created by the Constitution or federal law. *Lossman v. Pekarske,* 707 F.2d 288, 290 (7th Cir.1983). The elements of a cause of action under section 1983 are (1) a constitutionally recognized duty on the part of the state to conform to a certain standard of conduct for the protection of others against an unreasonable risk of harm; (2) a failure to conform to that standard; (3) a causal connection between the state's failure and the plaintiff's injury; and (4) actual damage. *Jackson v. Byrne,* 738 F.2d 1443, 1446 (7th Cir.1984) (duty); *Parrett v. City of Connersville, Indiana,* 737 F.2d 690, 695 (7th Cir.1984) (causal connection); *Lossman,* 707 F.2d at 290–91 (actual damage).

*Id.*

In their complaint, plaintiffs allege that the defendants' actions subjected them to a "deprivation of their substantive rights in violation of the Fourteenth Amendment...." As this claim could be interpreted to allege a violation of plaintiff's procedural or substantive due process rights, or both, each of these rights will be addressed.

Although there appears to be substantial confusion in the courts and elsewhere concerning the distinction between a substantive and a procedural due process right, the distinction is important. As stated in the Georgia Law Review,

... the due process clauses of the fifth and fourteenth amendments have both a procedural and a substantive component. Procedural due process concerns the method by which government deprives a person of life, liberty, or property. Due process in this context is designed to insure that governmental intrusions upon constitutionally protected interests are accompanied by fair procedures. As recognized by the Court, the objective of "procedural due process is to convey to the individual a feeling that the government has dealt with him fairly as well as to minimize the risk of mistaken deprivations of protected interests." *Carey v. Piphus*, 435 U.S. 247, 262 [, 98 S.Ct. 1042, 1051, 55 L.Ed.2d 752] (1978); *see also Mackey v. Montrym*, 443 U.S. 1, 13 [99 S.Ct. 2612, 2618, 16 L.Ed.2d 321] (1979); *Matthews v. Eldridge*, 424 U.S. 319, 348 [96 S.Ct. 893, 909, 47 L.Ed.2d 18] (1976).

Substantive due process is a more stringent limit on state power. It protects the individual against certain government actions regardless of the fairness of the procedure used to implement them. Just as the first amendment renders the federal government powerless to prohibit peaceful picketing in front of the Supreme Court, *United States v. Grace*, [461 U.S. 171] 103 S.Ct. 1702, 1710 [75 L.Ed.2d 736] (1983), the due process clause prevents states from imposing criminal sanctions for the performance of first trimester abortions, *City of Akron v. Akron Center for Reproductive Health, Inc.*, [462 U.S. 416] 103 S.Ct. 2481, 2492 [76 L.Ed.2d 687] (1983); *Roe v. Wade*, 410 U.S. 113, 163 [93 S.Ct. 705, 731, 35 L.Ed.2d 147] (1973). Criminal abortion laws are unconstitutional not because they are attended by unfair procedures, but because the Constitution does not grant government the power to interfere with this aspect of liberty.

Wells & Eaton, *supra*, at 215–216.

### 1. Procedural Due Process

■ In *Parratt v. Taylor*, the Supreme Court held that the negligent loss of a prisoner's hobby materials by state prison officials did not present a cognizable § 1983 due process claim because state tort remedies provided adequate relief for any deprivation that may have occurred. 451 U.S. 527, 543–44, 101 S.Ct. 1908, 1916–17, 68 L.Ed.2d 420 (1981).

In subsequent cases interpreting *Parratt*, the courts have held that a federal court must first consider the adequacy and availability of state law remedies in determining whether there has been a due process violation. *See Geunther v. Holmgreen*, 738 F.2d 879, 882 (7th Cir.1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985). However, as explained by the Seventh Circuit Court of Appeals in *Guenther*, this inquiry into the adequacy of state tort remedies is a determination of whether the state has satisfied the procedural due process requirements of the Fourteenth Amendment. *Id.* If state tort remedies are available, the states have satisfied the Fourteenth Amendment procedural due process requirements, and a claim for such a violation is not cognizable under § 1983. *Id.*

The plaintiffs' claims essentially involve the common law torts of assault and battery. There are adequate tort remedies available under Indiana law for assault and battery. *See e.g., Livingston v. Consolidated City of Indianapolis*, 398 N.E.2d 1302 (Ind.App.1979); *Cohen v. Peoples*, 140 Ind.App. 353, 220 N.E.2d 665 (1966). *See also* the Indiana Tort Claims Act, Ind.Code § 34-4-16.5-1 *et seq.*

The Indiana Tort Claims Act ("I.T.C.A.") removed a substantial portion of the state's sovereign immunity which had existed previously. This immunity was not completely eradicated, however. Ind.Code § 34-4-16.-5-3 states in part that "[a] governmental entity or an employee *acting within the scope of his employment* is not liable if a loss results from ... the performance of a discretionary function." (Emphasis added.) In *Carrell v. City of Portage*, 609 F.Supp. 314 (N.D.Ind.1985) the District Court held that because city firemen had no statutory

duty or duty under their individual contracts to rescue pedestrians, the fireman's affirmative act of shining his light at an oncoming car and pedestrian to prevent the car from striking the pedestrian was not immune under the I.T.C.A. as a discretionary function performed within the scope of employment. A discretionary function has generally been defined as one which gives the employee the decision of whether or not to perform a certain act. *Maroon v. State Dept. of Mental Health,* 411 N.E.2d 404 (Ind.App.1980). This is in contrast to ministerial duties, which contain no real discretion for the employee. Ministerial duties do not have the defense of sovereign immunity, but are covered by the I.T.C.A. *See Board of Comm'rs of Delaware County v. Briggs,* 167 Ind.App. 96, 337 N.E.2d 852, *reh'g denied,* 167 Ind. 96, 340 N.E.2d 373 (1975).

Prisoner beatings are not mandated by Indiana law, so these alleged acts could not constitute participation in a ministerial function. Such beatings, however, would also be outside the scope of any of the defendants' employment, as the *Carrell* standard is easily met. Thus, the plaintiffs are not precluded from recovery by Ind. Code § 34–4–16.5–3.

The plaintiffs' claims are against the Board Members of the Department of Corrections, the Superintendent and Assistant Superintendents of the Reformatory, a unit team manager and a correctional officer in a supervisory position at the Reformatory. All of these defendants are public employees, as they act on behalf of a governmental agency. Ind.Code § 34–4–16.5–2 (Supp. 1982). Therefore, the causes of action filed by plaintiffs come within the Indiana Tort Claims Act. Indiana Code § 34–4–16.5–7 provides that a claim is barred against a political subdivision unless notice of the claim is filed with the governing body of that political subdivision within one hundred eighty (180) days after the loss occurs. *Gonser v. Board of Commissioners,* 177 Ind.App. 745, 378 N.E.2d 425 (1978). Indiana Code § 34–4–16.5–6 states that a claim must be filed with the state within one hundred eighty (180) days.

The plaintiffs have not filed a claim with the Board of Commissioners, the Department of Corrections, or in any state court, and the one hundred eighty (180) day limit has clearly passed. Therefore, plaintiffs' claim is barred from a state remedy. While it may be argued that a complete lack of remedy cannot be classified as an "adequate" one, it must be remembered that the plaintiffs have been foreclosed from state recovery by their own inaction, rather than by any inherent prohibition of Indiana law.

Additionally, Ind.Code § 34–4–16.5–4 states:

> The combined aggregate liability of all governmental entities and of all public employees, acting within the scope of their employment and not excluded from liability under section 3 of this chapter, does not exceed three hundred thousand dollars ($300,000) for injury to or death of one (1) person in any one (1) occurrence and does not exceed five million dollars ($5,000,000) for injury to or death of all persons in that occurrence. A governmental entity is not liable for punitive damages.

Thus, the I.T.C.A. limits each plaintiff to Three Hundred Thousand Dollars ($300,-000.00) in actual damages and the plaintiffs are precluded from recovering punitive damages. Punitive damages are designed to punish the defendant for his outrageous acts, however, and not to compensate the plaintiff. Thus, the exclusion of punitive damages does not make the state law remedy "inadequate" as it relates to the plaintiff's injuries.

The plaintiffs allege in their complaint that they were "unmercifully and severely beaten and repeatedly stabbed" by the inmates in retaliation for defendants' actions. Although there are few facts in the record indicating the extent of the plaintiffs' injuries, it is unlikely that such injuries could amount to more than Three Hundred Thousand Dollars ($300,000.00) in damages for any of the plaintiffs.

Although precluded from recovery under the I.T.C.A., the plaintiffs may still receive compensation for their injuries under the

State Personnel Act, Ind.Code § 4–15–2–1 *et seq.*, and the Indiana Workmen's Compensation Act, Ind.Code § 22–3–1–1 *et seq.*

Plaintiffs had a full one hundred eighty (180) days to file their claim under the Indiana Tort Claims Act, which this Court does not consider an inadequate time period for initiating the plaintiffs' claim. The reasonableness of the I.T.C.A. damage limitations, as well as the available alternate state compensation plans, also point toward the adequacy of the plaintiffs' state remedies. This Court must thus conclude that sufficient state tort remedies existed for the plaintiffs and that the plaintiffs have failed to state a procedural due process claim sufficient to defeat defendants' 12(b)(6) motion.

### 2. *Substantive Due Process*

■ An issue completely separate from the procedural due process determination is whether the plaintiffs' substantive due process rights have been violated. As the Seventh Circuit recently stated in *Guenther:* "Two separate Seventh Circuit panels and various other courts and commentators have recognized that *Parratt* is inapplicable where the plaintiff asserts a violation of substantive constitutional guarantees—*e.g.*, Fourth Amendment protections—as distinguished from a violation of his procedural due process rights." 738 F.2d at 882 (citing *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 871–72 (7th Cir.1983); *State Bank of St. Charles v. Camic,* 712 F.2d 1140, 1147 n. 2 (7th Cir.1983)), *cert. denied,* 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983); *see also* Wells & Eaton, *supra.* Thus, a plaintiff may maintain a substantive due process claim even though there are state tort remedies available. The plaintiffs however, need to show how a substantive due process right has been violated in order to survive the defendants' 12(b)(6) motion. This requirement essentially conforms to the "duty" requirement of *Benson v. Cady,* 761 F.2d at 339.

In their first reply brief, plaintiffs stated what they considered to be the substantive due process violation:

The plaintiffs ... have alleged a deprivation of their substantive constitutional liberty without *substantive* due process as ... the defendants had an *affirmative duty,* under the Fourteenth Amendment, to protect the plaintiffs from the reasonably foreseeable risk of harm by retaliating prisoners proximately caused by defendants' policies and practices of allowing prisoner abuse.... Specifically, the plaintiffs claim that the defendants, by their intentional malfeasance in condoning and permitting prisoner abuse, effectively deprived the plaintiffs of liberty rights secured by the Fourteenth Amendment. The relationship between the plaintiffs and the State is of constitutional proportion, claim the plaintiffs, because the "State," (that is, these particular defendants), by its unconstitutional and egregious conduct, placed the plaintiffs in a position of unnecessary danger from private persons. An affirmative duty of protection rising to constitutional proportions can be created by "custodial *or other special relationships.*"

Plaintiffs' reply brief, p. 5 (emphasis in original).

In *Walker,* however, the Seventh Circuit explicitly found that there was *no* special relationship existing in an employment relationship. 791 F.2d at 511. Since *Walker* was decided by the Seventh Circuit, the plaintiffs have emphasized the intentional nature of the defendants' actions.

The Seventh Circuit stated that "[t]he defendants did not kill or injure the guards; prisoners did, and this makes all the difference." *Walker,* 791 F.2d at 509. The plaintiffs here allege that the defendants are the ones who actually injured the plaintiffs. Plaintiffs argue that the prisoners were not independent actors, but rather that their actions were the foreseeable consequence of the defendants' allegedly wrongful and unconstitutional torts.

Although the boundaries of constitutional torts are far from clear, the plaintiffs appear to have satisfied the duty requirement of *Benson v. Cady* by alleging that inmate Love was severely and unjustifiably beaten after he had been subdued, as the duty need not necessarily be owed to the eventual plaintiffs. *See Ridley v. Leavitt,*

631 F.2d 358 (4th Cir.1980). In *Ridley*, the Fourth Circuit found that a claim of excessive force used against an inmate stated a proper constitutional cause of action. As this force was improperly directed at inmate Love, the duty requirement is also satisfied as to the plaintiffs. *Id.* at 359–60. *See also* Wells & Eaton, *supra*, discussing a standard for establishing the limits of "constitutional tort" liability.

▮ Despite the fact that a duty has been shown, and assuming defendants breached such duty and plaintiffs suffered actual damage, plaintiffs have nonetheless failed to state a claim sufficient to defeat a 12(b)(6) motion, as a causal connection cannot, as a matter of law, be shown between the defendants' breach of their duty and plaintiffs' injury. "[C]ausation is as necessary in a constitutional-tort case as in an ordinary tort case." *Grossart v. Dinaso*, 758 F.2d 1221, 1236 (7th Cir.198 ) (Posner, Circuit Judge, dissenting); *see also Parrett v. City of Connersville*, 737 F.2d 690, 695 (7th Cir.1984). While an intentional tortfeasor must exercise the utmost caution to prevent his victim from sustaining further harm, he remains insulated from injuries caused by wholly unforeseen accidents occurring without his agency. *Hibma v. Odegaard*, 769 F.2d 1147 (7th Cir.1985). Further, the intentional torts or criminal acts of third person may constitute a superseding cause of harm and may relieve a tortfeasor from liability for harm caused by third person's torts or acts, either when original tortfeasor's negligence creates an opportunity for a third person to commit an intentional tort or criminal act, or when original tortfeasor's intentional action creates the opportunity. *Id.*

As the Seventh Circuit noted in *Walker*, the fact that the prisoners, rather than the defendants, physically injured the plaintiffs is a critical distinction. The prisoners were not the agents of the defendants, and the prisoners' actions were a substantial intervening force, even assuming that the defendants had a policy of prisoner beatings.

In *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1979), the Supreme Court quoted *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1978), in stating that " '[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right "secured by the Constitution and laws" ' of the United States." 444 U.S. at 284.

In *Martinez*, the plaintiff's decedent had been murdered by a parolee after his release from prison. The Court found that the plaintiff had not been so deprived, stating that:

Appellants contend that the decedent's right to life is protected by the Fourteenth Amendment to the Constitution. But the Fourteenth Amendment protected her only from deprivation by the "*State* ... of life ... without due process of law." Although the decision to release [the parolee] from prison was action by the State, the action of [the parolee] five months later cannot be fairly characterized as state action. Regardless of whether, as a matter of state tort law, the parole board could be said either to have had a "duty" to avoid harm to his victim or to have proximately caused her death, *see Grimm v. Arizona Bd. of Pardons and Paroles*, 115 Ariz. 260, 564 P.2d 1227 (1977); *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), we hold that, taking these particular allegations as true, appellee did not "deprive" appellants' decedent of life within the meaning of the Fourteenth Amendment.

[Decedent's] life was taken by the parolee five months after his release. He was in no sense an agent of the parole board. Cf. *Scheuer v. Rhodes*, 416 U.S. 232 [, 94 S.Ct. 1683, 40 L.Ed.2d 90] (1974). Further, the parole board was not aware that appellants' decedent, as distinguished from the public at large, faced any special danger. We need not and do not decide that a parole officer could never be deemed to "deprive" someone of life by action taken in connection with the release of a prisoner on parole. But we do hold that at least under the particular circumstances of this parole decision, appellants' decedent's death is too remote a consequence

of the parole officers' action to hold them responsible under the federal civil rights law. Although a § 1983 claim has been described as "a species of tort liability," *Imbler v. Pachtman*, 424 U.S. 409, 417, [96 S.Ct. 984, 988, 47 L.Ed.2d 128] (1976), it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute. *Id.*, 444 U.S. at 284–85, 100 S.Ct. at 559.

This is not to say that different rules of causation apply in a constitutional tort case. *See Parrett v. City of Connersville, Ind.*, 737 F.2d 690, 695 (7th Cir.1984). According to the Seventh Circuit, the Supreme Court in *Martinez* was really attacking the "duty" requirement of plaintiff's claim, rather than the causation requirement, as the Constitution did not create a duty to protect the public safety. *Id.* The considerations in *Martinez*, however, are still relevant in defining the parameters of causation.

In the instant case, while the plaintiffs may have faced a special danger when compared to that faced by the public at large, the plaintiffs faced no more danger than any of the other prison guards at the Reformatory. As *Walker* noted, this danger is assumed and negotiated for in the employment contract. *Walker*, 791 F.2d at 510. The Court in *Walker* stated that "[P]ontiac [reformatory] is a den of murderers, rapists, and others with no respect for the law—and all too often nothing to lose from further mayhem." *Id.* at 512. The same could be said of the Reformatory, a high security state institution. While assumption of risk is not a proper defense to an intentional tort claim as it is implicitly a negligence term, *Moe v. Jolly Joan*, 239 Ore. 531, 399 P.2d 22 (1965), the lack of a "special danger" created toward the plaintiffs attacks both the duty and causation elements. *Martinez*, 444 U.S. at 285, 100 S.Ct. at 558. The inmates also could not be considered agents of the defendants. *Id.* The *Martinez* Court stated that "[w]e need not and do not decide that a parole officer could never be deemed to 'deprive' someone of life by action taken in connection with the release of a prisoner...." *Id.* The Court, however, found decedent's death

"too remote a consequence" from the defendants' actions. It is not hard to imagine circumstances which would not be so remote from the injury. For example, if the prisoner had stated immediately before release that he was going to kill his ex-wife, and then did so, causation might be found. *Martinez* did not state what type of factual situations would give rise to § 1983 liability, but only that its own fact situation was insufficient.

The facts stated in the plaintiff's complaint are similarly insufficient to establish § 1983 liability. There may be some fact situations in a prison guard injury case which produce a proper § 1983 cause of action; perhaps if the defendants had told the prisoners that the plaintiffs ordered them to commit prisoner beatings, such a statement would have produced inmate retaliation aimed specifically at the plaintiffs. In the instant case, assuming the plaintiffs had refrained from inmate beatings, it is more foreseeable that the prisoners would retaliate against the guards who instigated the beatings, instead of the plaintiffs. While this Court declines to state the exact degree of causation required for § 1983 liability to accrue, the Court is satisfied that this case falls on the *Martinez* side.

For the reasons articulated herein, defendants' motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is *granted* as to defendant Indiana Department of Corrections and the Board Members of the Department of Corrections, Norman G. Owens, Robert Shriner, Craig Hanks, Dan Juroff, and Lt. William Wicker in their official capacities. Defendants' motion to dismiss for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6) is also *granted* as to defendants Board Members of the Department of Correction, Norman G. Owens, Robert Shriner, Craig Hanks, Dan Juroff, and Lt. William Wicker in their individual capacities.

IT IS SO ORDERED.